[Civ. No. 1666. Third Appellate District.—July 5, 1917.]

EARLE R. CLEMENS, Plaintiff and Appellant, v. WELL-INGTON GREGG, Jr., as Trustee, Respondent; KEANE-WONDER MINING COMPANY, Defendant and Appellant; FRANCIS MOHAWK MINING & LEASING COMPANY et al., Defendants and Respondents.

ATTORNEY AND CLIENT—AUTHORITY.—An attorney is the agent of his client for the management and conduct of the cause while it is pending before the court for determination, and, as such agent, he has authority to bind his client in all matters pertaining to the conduct and management of the suit.

ID.—STIPULATION OF ATTORNEY—PRESUMPTION OF AUTHORITY—EXCEP-TION.—A stipulation of an attorney will be presumed to have been authorized by the client, as well in order to uphold the action of the court as for the protection of the other party to the stipulation; but when the adverse party, as well as the court, is aware that the attorney is acting in direct opposition to his client's instructions or wishes, the reason of the rule ceases and the court ought not to act upon the stipulation.

ID.—FORECLOSURE OF DEED OF TRUST—STIPULATION OF COUNSEL—FORM OF DECREE—WAIVER OF APPEAL.—A stipulation between the attorneys of the parties in an action for the foreclosure of a deed of trust, providing the terms upon which a decree of foreclosure and sale may be entered, and waiving all right of appeal therefrom, is binding on the parties, under section 283 of the Code of Civil Procedure giving an attorney authority to bind his client to any of the steps of an action.

ID. — APPEAL FROM DECREE OF FORECLOSURE — STIPULATION — SALE. — Where by stipulation an appeal from a decree of foreclosure and supplemental decree of sale is waived, the taking of an appeal from the former does not stay proceedings on the decree so as to prevent the court from entering supplemental order of sale.

ID.—STAY OF PROCEEDINGS.—Where a deed of trust is by stipulation converted into and foreclosed as a mortgage, an appeal taken by the trustor from the decree of foreclosure, he being in the possession of the property, does not stay proceedings unless a written under-taking is executed as provided by section 945 of the Code of Civil Procedure.

APPEAL from a judgment of the Superior Court of Inyo County, and from an order of sale. Wm. D. Dehy, Judge.

The facts are stated in the opinion of the court.

Gavin McNab, and R. P. Henshall, for Plaintiff and Appellant.

Oliver B. Wyman, for Appellant Keane-Wonder Mining Company.

Morrison, Dunne & Brobeck and Edward Lynch, for Respondent Wellington Gregg, Jr., as Trustee, etc.

George S. Green, Mack & Green, and John B. Clayberg, for Respondents Francis Mohawk Mining & Leasing Company et al.

CHIPMAN, P. J.—The statement of the case by appellants and respondents in their respective briefs does not differ materially. We have followed that of the respondents mainly.

On April 13, 1909, the plaintiff herein brought suit against Wellington Gregg, Jr., as trustee, under a trust deed made to secure certain notes of the Keane-Wonder Company given to the Francis Mohawk Company and James F. Peck, to enjoin a sale of the property therein described under an advertisement in execution of the power of sale contained in such trust deed, and for an accounting for moneys received and paid on account of indebtedness, and for other relief. A preliminary injunction was issued prohibiting the trustee from making a sale of the property. The defendant, Francis Mohawk Mining and Leasing Company, filed its answer and cross-complaint, in which it claimed that it owned the notes given to it by the Keane-Wonder Mining Company, and alleged that the same, together with certain notes given to James F. Peck, were secured by a mortgage or trust deed covering all the property of the Keane-Wonder Mining Company. It claimed that the lien thus created was valid and enforceable, and prayed a foreclosure of the trust deed under the equitable powers of the court.

The defendant, Benjamin H. Tatem, who had succeeded to the rights of James F. Peck, filed his answer and set forth his right of security under the trust deed in question, and prayed that if the same be foreclosed, such foreclosure should also be in his interest.

Plaintiff had alleged in his complaint that Frank L. Wildes, as receiver of the State Bank and Trust Company of Nevada, claimed to be the equitable owner of the notes executed by the Keane-Wonder Mining Company to the Francis Mohawk Mining Company; that the Keane-Wonder Mining and Leasing Company was uncertain as to the ownership of these notes and desired that the question be determined before it paid any money thereon.

While the pleadings were in this condition, all the then parties to the suit, by their respective attorneys, entered into two stipulations, for the purpose of settling all matters of controversy between them, and of giving the Keane-Wonder Mining Company the opportunity to liquidate its indebtedness in whole or in part, by the operation of its mining properties. In the first stipulation it was recited that Wildes, as receiver, had been made a party to the suit "with the purpose and object that his claim, if any, to said promissory notes or the money due thereon, or the indebtedness represented thereby, should be fully and finally determined." The stipulation then proceeded: "Now, therefore, in consideration of the premises and for the purpose of enabling the said Keane-Wonder Mining Company to pay its said indebtedness, and of enabling its creditors to receive payment thereof as speedily as possible, and to avoid further litigation and expense of all parties thereto and to finally determine this litigation, it is hereby stipulated and agreed," etc. It is also provided that the Keane-Wonder Mining Company should pay monthly to A. L. Meyerstein, as trustee, the net proceeds of the operation of its mines which should accrue from the first day of November, 1909, to be held by Meyerstein as trustee until it should be determined whether Wildes, as receiver, or the Francis Mohawk Mining Company was entitled to the same, and, upon such determination being reached, to pay over this one-fourth to Tatem and three-fourths to the party thus found to be entitled thereto; the amount when paid over to the respective parties to be credited on the notes belonging to the respective parties as of the date of such payment. It then provided how the net proceeds should be determined; provided for the inspection of the mine's operation, records, and books of the company, and made further provisions immaterial to the questions now before the court. It finally provided, however, that all proceedings in the action

between the parties to the stipulation should be stayed so long as such net proceeds were deposited with Meyerstein, "until the question as to the ownership of the indebtedness represented by the notes given to the Francis Mohawk Mining Company is finally decided, and it is finally determined whether the same belong to Frank L. Wildes as receiver of the State Bank and Trust Company or said Meyerstein as receiver of the Francis Mohawk Mining Company."

This stipulation was preliminary to another entered into on the same day settling all questions and controversies between the parties. It recites: "Whereas, it is the desire and purpose of all the parties to this action to compromise and settle all issues involved herein between them and to permit the Keane-Wonder Mining Company to liquidate its indebtedness out of the net proceeds of its property, if possible, and to avoid any interruption of its own management of said property or the sale thereof." It then recites the execution of the preliminary stipulation above noted, and provides that the second stipulation was entered into in consideration of such compromise and settlement, for the purpose of carrying the same into effect and fully perfecting the intention of the parties. It provides that there is due to the owners of the Francis Mohawk Mining and Leasing Company's notes the amount thereof, and to Benjamin H. Tatem, the amount of the notes given to Peck; that a decree of foreclosure should be entered after such litigation between Wildes and the Francis Mohawk Mining and Leasing Company had been settled, and such decree should find that there was due Wellington Gregg, as trustee, under the deed, five hundred dollars as his compensation as trustee and five hundred dollars for his attorney's fees, and provided: "which by the terms of said decree shall be paid out of the first monthly net proceeds of the mines of the Keane-Wonder Mining Company next accruing." It then provides that it should be determined by said decree that the trust deed was a valid and enforceable obligation, and that the owners of the notes should have and be given the first lien upon all the property of the Keane-Wonder Mining Company as described in the trust deed, for the payment of all moneys due thereon; that the deed of trust be foreclosed in equity on behalf of the owners of the notes, and that such owners should be entitled to a sale of all and singular the property of the Keane-Won-

der Mining Company described in the deed, or so much thereof as might be necessary to fully liquidate the indebtedness. It then recites: "thus finally settling and determining all matters of issue in this case between the parties to this stipulation." It further provided that no order of sale of the property of the Keane-Wonder Mining Company should be made, at the time of the entry of such final decree, but that the Keane-Wonder Mining Company should have the right to pay the amount found due by the decree, in the way and manner described in the stipulation; that the court in granting the decree should especially retain jurisdiction, and if the Keane-Wonder Mining Company did not fully pay the amount so found due, the court should enforce the decree and make its terms effective by thereafter entering a supplementary decree or order that all property described in the deed of trust, or so much thereof as might be necessary, be sold in the same manner as mortgaged property under a decree of foreclosure, and that the Keane-Wonder Mining Company might have one year after the sale to redeem the property. It provided the method whereby the Keane-Wonder Mining Company should pay the amount found due under the decree, and further provided that no order of sale should be entered so long as the Keane-Wonder Mining Company should deposit monthly the net proceeds of the mine to the credit of the owners of the notes, that company agreeing that the total net proceeds for any six continuous months should be fifteen thousand dollars; that if the fifteen thousand dollars was not paid every six months, the owners of the notes might apply to the court for an order of sale of all the property described in the trust deed. The stipulation made a further provision that if at any time the owners of the notes should claim that the Keane-Wonder Mining Company was not in good faith paying monthly to the bank such proceeds, and should claim the right to apply to the court for an order of sale, then they should give the parties to the stipulation twenty days' notice previous to such application, and said court should determine the question. It further provided for a release of all injunctions, bonds, and securities. It was further "stipulated and agreed that each and all of the parties hereto hereby directly and distinctly waive any and all rights of appeal not only from the original decree herein provided for but from any supplemental decree or order

which may be necessary to be made and entered by said court under the terms of this stipulation." A form of the decree of foreclosure was attached to the stipulation.

After the execution of these two stipulations Wildes appeared in the case and filed his answer to the complaint, and also joined therewith a cross-bill setting forth his rights as receiver to the notes given by the Keane-Wonder Mining Company to the Francis Mohawk Mining Company. This answer and cross-complaint was amended and, after such amendment, the Francis Mohawk Mining Company filed its answer to such cross-bill.

While it is true that Wildes, in his cross-complaint, asked for an accounting from defendant Benjamin H. Tatem, and sought to recover judgment against the Francis Mohawk Mining and Leasing Company for the amount of money which might have been wrongfully paid to it by the Keane-Wonder Mining Company, such proceedings were thereafter had in court that Wildes waived his claim for an accounting against Tatem, settled all controversies between himself and the Francis Mohawk Mining and Leasing Company, and became the owner of one-fifth of the indebtedness held by the Francis Mohawk Mining Company. This was in strict accord with the stipulation and the judgment is not in question here. This settlement is disclosed by the stipulation between the attorneys for Wildes as receiver and the attorneys of the Francis Mohawk Mining and Leasing Company, dated January 16, 1914, and the interlocutory decree entered by the court on the twenty-fourth day of January, 1914. All controversies between Wildes as receiver and the Francis Mohawk Mining and Leasing Company having been settled by the above interlocutory decree, application was made for a decree of foreclosure, as provided for in the stipulation of November 6, 1909. This decree was duly entered by said court on the twenty-sixth day of June, 1914, and from this decree plaintiff and the Keane-Wonder Mining Company filed a notice of appeal on July 23, 1914.

On April 14, 1914, the owners of the notes served a notice of motion for a supplemental decree or order of sale accompanied by a petition. This motion came on regularly for hearing on the sixth day of May, 1914, and the court made an order that the motion should be at that time denied, without prejudice to the right of the parties to renew their motion and

their application for said order on the twenty-sixth day of
July, 1914, or at such time thereafter as might be convenient
to the court, without further notice of the motion.   On the
fourth day of August, 1914, the motion was renewed upon the
original and a supplemental petition and the application
came on for hearing before the court on the twenty-seventh
day of August, 1914.   Attorneys for the plaintiff and the
Keane-Wonder Mining Company appeared and filed demur-
rer to the petitions which were overruled.   They then filed
answers which set forth certain objections to the granting of
the application, of which counsel for appellants mentions the
three following: (a) That the final judgment could not be
enforced, for the reason that it had been appealed from to
the supreme court, and that said appeal was pending and
undetermined; (b) That the amount of the judgment was
over fifteen thousand dollars in excess of what was due from
the Keane-Wonder Mining Company to the Francis Mohawk
Mining Company, according to the terms of the stipulation;
(c) That the decree was void on its face, for the reason that
it was entered without notice to anyone pursuant to a stipu-
lation of compromise and signed by the attorney for the par-
ties which they were without authority to enter into.

After filing the answers, the court proceeded to the hearing
of the issues then raised and made an order that the sale be
made as prayed for.   The order recites that: "Upon full con-
sideration of the testimony, both oral and documentary, pre-
sented and given in open court in behalf of the respective
parties, and the admission of the attorney and solicitor for
the plaintiff and the defendant, the Keane-Wonder Mining
Company, made in open court, the court now finds that said
petitioners are entitled to the sale of all and singular the
property, rights, and privileges described in the original de-
cree of foreclosure duly made and entered January 26, 1914.
Now, therefore, in pursuance of the exercise of the jurisdic-
tion of this court, especially reserved in said original decree
of foreclosure and as supplemental to said decree, it is hereby
ordered," etc.   Appeals were also taken by each of the ap-
pellants from this order of sale.

Respondents have moved the court to dismiss each of the
appeals on the ground that all right of appeal was waived by
the stipulations under which the decree and subsequent order
were made.   The following is the provision relied upon: "It

is hereby further stipulated and agreed that each and all of the parties hereto hereby directly and distinctly waive any and all rights of appeal, not only from the original decree herein provided for, but from any supplemental decree or order which may be necessary to be made and entered by said court under the terms of this stipulation." Concededly, both the original decree and the order of sale were made pursuant to the stipulations, and respondents contend that having thus been entered with the consent of appellants, neither the decree nor order was appealable, citing *Erlanger* v. *Southern Pac. R. R. Co.*, 109 Cal. 395, [42 Pac. 31], and *Pacific Paving Co.* v. *Vizelich*, 1 Cal. App. 281, [82 Pac. 82].) "It is the universal rule," said the court, in *Hibernia Savings etc. Soc.* v. *Waymire*, 152 Cal. 286, [92 Pac. 645], "that a judgment or order will not be disturbed on an appeal prosecuted by a party who expressly consented to the making thereof. This doctrine is established by a long line of decisions. (Citing cases.) It is also settled in this state that where a party who has expressly consented to and stipulated for the making of a certain judgment or order so agreed to and made in pursuance of the consent and stipulation, the appellate court will not consider the appeal at all, but will dismiss it on motion in that behalf." (Citing cases.) It was said, in the Erlanger case, *supra:* "A judgment under stipulation is a judgment by consent."

Appellants advance several propositions in answer to the motion. It is contended that the attorneys who signed the stipulation (including, of course, themselves) had no authority to do so. Appellants say: "If this decree had been a consent decree—if in open court the parties had appeared and had consented to the entry of the decree appealed from, an appeal obviously would not have laid from it." It is urged that this was not a consent decree, because the terms of the decree, "in great part, were left thereafter to be settled"; for example, the amount due on the notes was left blank in the proposed form of decree. Furthermore, the decree was "to be entered upon certain contingencies," as shown by the following provision of the stipulation: "that immediately after the happening of any or all of the events mentioned in the attached stipulation . . . a final decree of foreclosure of said deed of trust under the equity of this court shall be duly made upon the stipulation," etc. It is further con-

tended that the stipulation or agreement is not within the purview of section 283 of the Code of Civil Procedure, which provides that an attorney shall have authority to bind his client to any of the steps of an action or proceeding "by his agreement filed with the clerk, or entered upon the minutes of the court, and not otherwise." Upon the point last above mentioned we understand the law to be that the attorney is the "agent of the client for the management and conduct of the cause while it is pending before the court for determination, and, as such agent, he has authority to bind his client in all matters pertaining to the conduct and management of the suit. . . . As a general rule, a stipulation of the attorneys will be presumed to have been authorized by the client, as well in order to uphold the action of the court, as for the protection of the other party to the stipulation; but when the adverse party, as well as the court, is aware that the attorney is acting in direct opposition to his client's instructions or wishes, the reason of the rule ceases and the court ought not to act upon the stipulation." (*Knowlton* v. *Mackenzie,* 110 Cal. 183, 188, [42 Pac. 580].) In the present case no sort of opposition was interposed by any of the parties to the stipulations. On the contrary, appellant, Keane-Wonder Mining Company, recognized their validity during a period of nearly four years and acted under the stipulations by payments to Meyerstein, trustee for the owners of the notes; and as to appellant, plaintiff in the action, a stockholder in said company, he remained passive, making no move to have the action brought to a final hearing, apparently acquiescing in the stipulations as the agreement by which the controversy was to be settled. The stipulations were not filed until March 13, 1913, over three years after they were entered into, about nine months before the original decree was entered. This was sufficient compliance with section 283 of the Code of Civil Procedure, for the stipulations then became the agreement of the parties "filed with the clerk." No injury is shown for the delay in filing the stipulations. It was not necessary to file them immediately. (*Smith* v. *Whittier,* 95 Cal. 279, 290, [30 Pac. 529].)

As to the alleged "contingencies" that were to happen, it appears that the "events mentioned in the stipulation" had reference exclusively to the relative rights of said Wildes, as receiver of the State Bank and Trust Company, and of said

Meyerstein, as receiver of the Francis Mohawk Mining and Leasing Company, to the indebtedness of the Keane-Wonder Mining Company. These rights were fully settled by the parties themselves and their proportionate share determined before the decree was entered. We cannot see that appellants' rights were in any wise injuriously affected or, indeed, involved in this adjustment. All parties stipulated that the indebtedness of the Keane-Wonder Mining Company, as evidenced by its promissory notes referred to in the stipulations, was a valid indebtedness. In the form of decree agreed upon, these notes were mentioned as belonging to the Francis Mohawk Mining Company, while, in the decree as entered, Wildes, as receiver, was recognized as owning a certain ascertained interest therein. But of this departure from the form agreed upon appellants cannot complain, since it did not in any way increase or diminish the liability under the notes the execution and delivery of which latter stood admitted and that they were secured by the trust deed.

Appellants further contend that the delay in filing the stipulations resulted in the commission of error in the amount found therein to be due. The Tatem (originally the Peck) notes bore interest at one per cent per month and the stipulation provided that the amount due Tatem should bear interest at seven per cent per annum from the date of the decree. Appellants contend that had the stipulations been filed immediately after being signed, the amount due at that time would have borne interest at seven per cent, and that the interest was erroneously computed at one per cent per month during this period of delay. The stipulation provided: "That a final decree of foreclosure of said deed of trust under the equity powers of this court shall be duly made . . . finding and decreeing that there is due and owing from said Keane-Wonder Mining Company . . . to Benjamin H. Tatem . . . on all the notes given by said Keane-Wonder Mining Company to James F. Peck . . . together with all interest due thereon. Said decree shall be entered . . . in favor of Benjamin H. Tatem as successor in interest of the said James F. Peck . . . and the amount found due to the said Benjamin H. Tatem shall bear interest from the date of said decree at the rate of seven per cent per annum." We think what was here meant was, without doubt, that interest was to be computed at the rate fixed in the notes and

that the principal, from and after the date of the decree, was to bear interest at seven per cent per annum, and this was done. The filing of the stipulations could not have had any influence in carrying out the terms of the stipulations. The entering of the decree did not depend upon the act of filing the stipulations but upon their terms, which latter show that the decree was not to follow immediately upon making or filing the stipulations.

It is also urged that the decree was not a consent decree, because a part of its terms "were left thereafter to be settled." Necessarily, the amount due upon the notes was left blank, but the stipulations clearly pointed out how the amount was to be ascertained. The things left to be settled were things for the settlement of which the stipulations made provision.

We have endeavored to consider the points urged against the motion and have assumed that, while the decree was entered *under* the stipulations, appellants have the right to show that it was not entered in accord with the *terms* of the stipulations. We have been unable to discover that there was any substantial or material deviation from the terms of the stipulations or that there was any departure therefrom in any way prejudicial to appellants.

Appellants contend that it was error to enter the order of sale for the reason that an appeal was pending from the decree of foreclosure, which, under section 949 of the Code of Civil Procedure, stayed all proceedings on the decree. Respondents reply that appellants waived their right to appeal from both the decree and the order. Furthermore, that in their appeal from the decree as well as from the order appellants filed only cost bonds in the sum of three hundred dollars, and no application was made to fix the amount of stay bond under section 945 of the Code of Civil Procedure.

We think both points are well taken by respondents. What has been said as to the waiver of the right to appeal applies equally to the decree and the order. The decree contains all the elements commonly regarded as necessary in a decree of foreclosure of a mortgage, and it seems to us that the stipulations clearly indicate that foreclosure proceedings were contemplated as the means of finally bringing about a settlement of the controversy. The decree determined the validity of the trust deed as enforceable and as creating a first lien on the

property to secure payment of the notes to the owners thereof and determined the amount due thereon; it directed the sale of the property as a whole and the application of the proceeds of the sale, and also provided that the property should be sold by the sheriff "after the time allowed by law for redemption has expired, to wit: one year from and after the date of said sale"; it barred the equity of redemption; provided for letting the purchaser into possession of the property, and also provided for a deficiency judgment. We can discover no element of foreclosure wanting.

That the decree was not followed by an immediate sale does not affect its validity. In the present case the delay was expressly provided for by the decree in pursuance of the terms of the stipulation upon which it was based. Section 945 reads as follows: "If the judgment or order appealed from, direct the sale or delivery of possession of real property, the execution of the same cannot be stayed, unless a written undertaking be executed on the part of the appellant, with two or more sureties, to the effect [then follow certain things which the appellant must refrain from doing], which must be specified in the undertaking." And "when the judgment is for the sale of mortgaged premises, and the payment of a deficiency arising upon the sale, the undertaking must also provide for the payment of such deficiency." The facts in this case, it seems to us, clearly bring it within the provisions of section 945.

In the case of *Owen* v. *Pomona Land & Water Co.*, 124 Cal. 331, [57 Pac. 71], cited in *Zappettini* v. *Buckles,* 167 Cal. 27, [138 Pac. 696], the latter cited by appellants, the court held that the decree taken in its entirety was "in substance an ordinary decree of foreclosure," but the court said: "If the defendant had been in possession of the real property, the bond to stay proceedings should have secured to the respondent the damages by waste and the value of the use and occupation; but the plaintiff being himself in the exclusive possession, these clauses of the statute (section 945) have no application, and the case not being one of mortgage, no undertaking for the payment of the deficiency was required." In the present case defendant, Keane-Wonder Mining Company, was in possession at all times mentioned, and still is, so far as appears.

In *Bank of Woodland* v. *Stephens,* 137 Cal. 458, [70 Pac. 293], the action was foreclosure of a mortgage. It was held that a stay bond was necessary where judgment for a de-

ficiency was waived and a receiver of rents, issues, and profits had been appointed, leaving the tenant of the mortgagor in possession; that a stay bond must be given against waste. In *Painter* v. *Painter*, 98 Cal. 625, [33 Pac. 483], cited by appellants, the court stated that "no undertaking to pay the deficiency is required in order to stay its execution (the execution of the decree) because such lien was not created by mortgage, and it is only in such case that an undertaking to pay the deficiency is required by section 945 of the Code of Civil Procedure. This was so held in *Englund* v. *Lewis*, 25 Cal. 337, 354, in construing section 352 of the old Practice Act, which contained similar provisions to those found in section 945 of the Code of Civil Procedure. It was there said: 'Where the sale is directed for the purpose of satisfying any lien other than a mortgage lien, the undertaking need not provide for the payment of any deficiency which the judgment may direct. To this extent the statute discriminates in favor of mortgage, and against all other liens.' "

Mr. Jones, in his work on Mortgages, volume 1, section 62, says: "A deed of trust to secure a debt is in legal effect a mortgage." In *Koch* v. *Briggs*, 14 Cal. 257, [73 Am. Dec. 651], it was held that a deed of trust is not a mortgage *requiring a foreclosure*. In that case it was insisted that the title of defendant could not be divested except by judicial foreclosure and sale. The distinguishing difference between a trust deed and mortgage pointed out was that "where there is a mortgage there is a right, after condition broken, to a foreclosure on the part of the mortgagee, and a right of redemption on the part of the mortgagor." In the present case the stipulation made provision for this feature and the decree gave the full statutory period for redemption. By consent of all parties the instrument was converted into and treated as a mortgage and was foreclosed as such.

Substantially all the points urged in support of the appeals upon their merits have been considered and disposed of in dealing with the foregoing matters. What has been said in connection therewith sufficiently shows, we think, that no error prejudicial either to the defendant, Keane-Wonder Mining Company, or its stockholders for whom plaintiff brought the action appears either in the decree or order of sale, and both the decree and order of sale are therefore affirmed.

Hart, J., and Burnett, J., concurred.