IN RE APPROPRIATION OF LANDS OF CROUCH: MORR, DIR. OF DEPT. OF NATURAL RESOURCES, ET AL., APPELLANTS, *v.* CROUCH, EXR., APPELLEE.

---

*This decision was made after the death of JUSTICE ZIMMERMAN and before the appointment of a successor.

(No. 68-563—Decided July 2, 1969.)

26

*Mr. Paul W. Brown*, attorney general, and *Mr. James W. Wheeler*, for appellants.

*Mr. John C. Graham*, for appellee.

SCHNEIDER, J. In oral argument, appellants abjured any contention that the landowner's husband, who was present at the conference when the settlement entry was prepared and who is now the real party in interest, should be estopped to deny the validity of the settlement entry.

The position of appellants is that the "journal entry —settlement" conveyed title to appellee's land to the state of Ohio; and is based upon two arguments: First, that the signature of landowner's attorney on the "journal entry—settlement" was binding on the landowner; and second, that even if the attorney did not have authority to settle, the landowner's delay in disaffirming ratified the attorney's settlement.

This cause may be placed in clearer perspective by examining the nature of a "journal entry—settlement" in a land appropriation case. This journal entry was used as an instrument of title. It was sent to the county auditor to

transfer ownership on the tax duplicate and to the county recorder as evidence of title in the state.

It is elementary that there must be statutory authority before any instrument is entitled to be recorded. 54 Ohio Jurisprudence 2d 554, Vendor and Purchaser, Section 12. The "journal entry—settlement," employed here, had no legal effect *per se*, and there was no authorization for its recording under the recording or appropriation statutes involved. Sections 123.21 to 123.38, Revised Code (repealed as of January 1, 1966, and replaced by Chapter 163, Revised Code).[1]

A landowner has the constitutional right to a jury's determination of the amount of compensation. Section 19, Article I, Constitution of Ohio. On the other hand, if the appropriating agency and the landowner agree upon an amount, a contract of settlement may be entered into and the action dismissed. However, there is no authority in the court itself to compel a settlement. Nor can the court, by its imprimatur, validate a settlement which is otherwise unenforceable, and attempt to give it the dignity of an instrument to convey title. The "journal entry—settlement" can have no validity beyond its validity as an executory contract to sell land.

It is the position of the appellants that the settlement entry has the legal effect of a *contract of sale* of that land to the state, because it was executed by the attorney for the landowner.

However, the rule in Ohio and elsewhere is that an attorney who is without specific authorization has no implied power by virtue of his general retainer to compromise and settle his client's claim or cause of action. 6 Ohio Jurisprudence 2d 138, Attorneys at Law, Section 88; Annotation, 30 A. L. R. 2d 944, 945. See *Tedrich Furniture Co.* v.

---

[1]Present Section 163.07, Revised Code, refers to a "journalization of a settlement entry," and present Section 163.09, Revised Code, mentions an "approval ordered by the court to a settlement of the rights of all necessary parties." Whether the result in this case would have been otherwise if these sections were applicable is not decided. However, in the opinion of the writer, a "settlement entry," to be effective, even under the present statutes, would require authority under the rules set forth in this case.

*Tisdale* (1958), 106 Ohio App. 345; *Shilling* v. *Ross* (App. 1933), 16 Ohio Law Abs. 458.

Moreover, where the power claimed is to sell real estate, the agent's authority must be expressly given to execute a contract for the sale of land before such contract will bind the principal. *Weatherhead* v. *Ettinger* (1908), 78 Ohio St. 104; *Spengler* v. *Sonnenberg* (1913), 88 Ohio St. 192; 2 Ohio Jurisprudence 2d 121, Agency, Section 69.

In claiming that the "journal entry—settlement" transferred title to the state appellant argues that the attorney had not only an implied power to sell land, but an implied power to convey the land. Again, such authority must be expressly given.

"The authority to convey realty has been recognized as distinct and separate from a mere authority to sell, and the question has sometimes arisen whether an agent empowered to sell has the power to convey where the latter power is not expressly given. In this connection, an authorization to convey real estate has the dignity of an instrument of title and, as such, should either expressly or by necessary implication state the authority of the agent without leaving it to be established by parol, inferred from coincidences, or based on speculation. . . ." 3 American Jurisprudence 2d 514, Agency, Section 118.

The record here discloses that no specific authority was conferred upon the attorney to act as agent for the owner to sell or to convey the land. Neither could such authority be implied, nor was it apparent. Attorney Moore, in testifying at the hearing on the motion to vacate, admitted that he was not given authority to sell or settle. He testified further that he was mistaken as to who actually held title to the land, believing that the owner's husband was a part owner.[2] Accordingly, the document entitled "journal entry

---

[2] The entry of settlement was signed by the attorney above the words "Accepted by/for the Landowners," in the plural, when in actuality the sole owner was Ruth E. M. Crouch. This indicates that the court, the state and the landowner's attorney were all under a misapprehension of the fact of ownership.

—settlement," although signed by the attorney for the landowner, was not an enforceable contract for the sale of land. *A fortiori*, it was not a valid conveyance of title.

Notwithstanding the lack of authority for the attorney to sign a contract of sale, appellants contend that the landowner ratified the attorney's signature by her delay of 19 months in the face of facts amounting to knowledge of the transaction.

It is true that an unauthorized settlement or contract executed by an attorney may be ratified by his client. Ratification may be implied from the fact that the client accepted the fruits of the settlement or contract with knowledge thereof or from the client's negligence, inaction, or apparent acquiescence in the settlement. 7 American Jurisprudence 2d 128, Attorneys at Law, Section 127. See *Weatherhead* v. *Ettinger, supra* (78 Ohio St. 104).

Negligence or inaction are insufficient in themselves to show ratification of an agent's unauthorized act, but ratification must follow knowledge of the facts. The instant facts are that the landowner received an *unsigned* copy of the "journal entry—settlement." It is entirely logical that she assumed no deed or sale of her land could be valid without her signature, particularly in view of the fact that the entry called for signatures but the copy she received showed no signatures. She never claimed or received the money deposited in court by the state, even after notice from the judge that it was there. It appears that when she finally learned that the land was no longer listed in her name on the county records, she promptly made efforts to disaffirm, which finally resulted in the filing of the motion to vacate the entry.

Appellee's decedent allowed only 19 months to pass before commencing this proceeding. Only in cases involving the passage of many years has the mere failure to disavow an attorney's unauthorized act been held to amount to ratification. *Summerville* v. *Galey*, 45 Pa. Sup. 62 (10 years); *Clemens* v. *Gregg*, 34 Cal. App. 245, 167 P. 294 (4 years). See 7 Corpus Juris Secundum 870, Attorney and Client, Section 71(b), What Constitutes Ratification. Nine-

teen months is not an unreasonable length of time to disaffirm where the landowner had no actual notice of the transfer of title and accepted no benefits from the unauthorized act. Therefore, there was no ratification of her attorney's unauthorized act.

The issue resolves itself into a situation similar to that involved in a consent decree where consent was not in fact given. It has been held that such a decree may be vacated, even after term, for irregularity in its procurement. *Sponseller* v. *Sponseller* (1924), 110 Ohio St. 395; *Harding* v. *Harding* (1905), 198 U. S. 317, 335. We hold that the lack of consent to the "journal entry—settlement" is an irregularity which should have compelled the Probate Court to vacate that entry pursuant to Sections 2101.33 and 2325.01, Revised Code.

*Judgment affirmed.*

MATTHIAS, Acting C. J., TROOP, GRAY, O'NEILL and HERBERT, JJ., concur.

DUNCAN, J., dissents.

TROOP, J., of the Tenth Appellate District, sitting for TAFT, C. J.

GRAY, J., of the Fourth Appellate District, sitting for ZIMMERMAN, J. Because of the inability, "by reason of illness," of JUSTICE CHARLES B. ZIMMERMAN "to hear, consider and decide" this cause, JUDGE GRAY of the Court of Appeals was, pursuant to Section 2 of Article IV of the Constitution of Ohio, duly directed by the Chief Justice "to sit with the justices of the Supreme Court in the place and stead of" JUSTICE ZIMMERMAN, and JUDGE GRAY did so and heard and considered this cause prior to the decease of JUSTICE ZIMMERMAN on June 5, 1969.