OPINION
Plaintiff-appellant Alan Dobbs appeals from a judgment, which, among other things, increases his child support obligation to $370 per month. Dobbs argues that the trial court erred in entering a judgment incorporating the parties' purported settlement agreement, because his attorney lacked authority to enter into the agreement. Asserting that due process mandates that a party be present when his attorney makes a settlement agreement on his behalf, Dobbs contends that the trial court's judgment should be reversed, since he was not present at the time the settlement agreement was entered into the record.
We conclude that while a party has a due process right to be present at his trial, there is no evidence to demonstrate that Dobbs was deprived of that right in this case, since his absence from the hearing at which the settlement agreement was read into the record appears to have been a voluntary decision on his part. We further conclude that Dobbs failed to preserve the issue of whether his trial attorney had authority to enter into a settlement agreement on his behalf, since he did not raise the issue in a motion either before or after final judgment had been entered in this case, and, therefore, failed to make a record on the issue adequate for appellate review. Accordingly, the trial court's judgment is Affirmed.
 I
Dobbs and Guthrie were divorced in 1987. Two children had been born as issue of their marriage: Brian, born October 19, 1979, and Warren, born August 28, 1981. Custody of the children was initially awarded to Dobbs. However, in 1995, Guthrie was designated the legal custodian and primary residential parent of the children, and Dobbs was ordered to pay child support in the amount of $249.17 per month, per child.
The facts surrounding the instant appeal began in June, 1998, when the Greene County Child Support Enforcement Agency notified the trial court that Brian would no longer be living with Guthrie as of June 5, 1998, and recommended that any child support received for him be impounded until a hearing could be held. The trial court ordered that Brian's child support payments be impounded, and scheduled a hearing to be held before a magistrate on August 17, 1998, to determine if child support for Brian should terminate because of his possible emancipation, or for any other reason.
Following the August 17th hearing, the magistrate issued a decision, finding that Brian was emancipated as of his eighteenth birthday on October 19, 1997, and recommending that Dobbs' child support obligation towards Brian be ended as of that date. The magistrate also found that Dobbs had overpaid his child support by $1,895.44, and, therefore, instructed him to file a motion for an order requiring repayment of that amount within 30 days of the date of the magistrate's decision. The magistrate also recommended that the child support obligation for Gregory remain at $249.17 per month, plus poundage.
Guthrie filed objections to the magistrate's decision, arguing that Dobbs' child support obligation towards Brian should not be terminated, since Brian was still in high school. On October 6, 1998, Guthrie filed a motion to increase child support due to a change in "the financial circumstances of the parties."
On October 28, 1998, a second hearing was held before the magistrate. The parties informed the magistrate that they had reached an agreement on the issues raised by Guthrie's objections to the magistrate's decision, and her motion for an increase in child support. The parties agreed that: (1) child support for Brian would terminate on October 19, 1998, rather than October 19, 1997; (2) the money impounded for Brian's support would be sent to Brian through the date of his emancipation; and (3) the child support for Gregory would be increased to $375 per month, effective November 1, 1998. The magistrate indicated that his previous determination that Dobbs had overpaid his child support obligation by $1,895.44 had been a mistake arising from his having received incorrect information regarding Brian's date of birth.[1] Finally, Dobbs' counsel indicated that he had discussed the agreement with Dobbs, and that Dobbs had consented to its terms.
On November 12, 1998, the trial court issued a judgment entry, incorporating the parties' settlement agreement. Dobbs appeals from that judgment entry.
 II
Dobbs' sole assignment of error on appeal states:
 DUE PROCESS REQUIRES THAT A DEFENDANT BE PRESENT IN COURT WHEN HIS ATTORNEY MAKES AN AGREEMENT ALLEGED TO BE IN THE PARTY'S BEHALF.
Dobbs acknowledges that his trial attorney informed the magistrate at the October 28th hearing that Dobbs had authorized him to accept the terms of the settlement agreement. However, Dobbs asserts that he was not present at the hearing where the terms of the settlement agreement were read into the record, and further asserts that if he had been, he would not have consented to the agreement. Citing the well established rule that a party has a right to be present at his trial in order to render assistance to his counsel, see, e.g., Hartt v. Munobe (1993),67 Ohio St.3d 3, 9, and Olsen v. Olsen (1993), 67 Ohio St.3d 12, 15, Dobbs argues that he was effectively denied that right, given the fact that his attorney lacked authority to accept the terms of the settlement agreement. Dobbs argues that, at a minimum, due process requires that a party be present in court when his attorney accepts a settlement agreement on his behalf, so that he can signal his approval or disapproval to the terms of the agreement. Therefore, Dobbs contends that the trial court's judgment should be reversed. We disagree.
"An attorney who is without special authorization has no implied or apparent authority, solely by virtue of his general retainer, to compromise and settle his client's claim or cause of action." Morr v. Crouch (1969), 19 Ohio St.2d 24, paragraph two of the syllabus.
Here, Dobbs' counsel informed the magistrate that he had discussed the settlement agreement with Dobbs, and that Dobbs had authorized him to accept the agreement. The trial court was entitled to rely on that representation. See DR 7-102(A) (5) ("In his representation of a client, a lawyer shall not * * * [k]nowingly make a false statement of law or fact in representing his client."). No evidence was submitted in the trial court to rebut the contention of Dobbs' attorney that Dobbs had authorized him to accept the terms of the settlement agreement. Furthermore, while Dobbs asserts in his appellate brief that he did not authorize his attorney to accept the terms of the settlement agreement, it is well settled that "factual assertions appearing in a party's [appellate] brief, but not in any papers submitted for consideration to the trial court * * *, do not constitute part of the official record on appeal, and an appellate court may not consider these assertions when deciding the merits of the case."Akro-Plastics v. Drake Industries (1996), 115 Ohio App.3d 221,225.
It is not apparent from the record just exactly when Dobbs first learned that his attorney had exceeded the scope of his authority (as Dobbs alleges he did) by accepting the terms of the settlement agreement. However, if Dobbs believed that his trial counsel had done so, he could have raised the issue by motion either before the trial court had incorporated the agreement into its judgment entry, or after the trial court had entered judgment, pursuant to Civ.R. 60(B). See Morr, supra (issue raised in a motion to vacate judgment). By not raising the issue in the trial court either before or after final judgment was entered, Dobbs prevented the trial court from making a factual determination whether his trial counsel had authority to settle the controversy, and thereby deprived himself of the opportunity to make a record on the issue that could have formed an adequate basis for appellate review of the issue.
Furthermore, we do not dispute that a party has a right to be present at his trial. However, there is no evidence in this record indicating that the trial court denied Dobbs his right to be present at the October 28th hearing. What Dobbs is really arguing is that this court should adopt a paternalistic rule, to wit: one that requires trial courts to compel parties to appear in court, in order to confirm their assent to a settlement agreement that has been reached on their behalf by their attorneys. Dobbs cites no authority for his proposition that due process mandates this type of a rule, and we have found none. The record in this case fails to show that Dobbs' absence from the October 28th hearing was anything other than voluntary. By not appearing at that hearing, it appears that Dobbs chose to rely on his attorney to represent his interests. When it became clear to Dobbs that his attorney had exceeded the scope of his authority, Dobbs was free to raise this matter in a motion either before or after judgment had been entered. By not doing so, he has failed to make a record adequate for review, and, therefore, has failed to preserve this issue for purposes of appeal.
In light of the foregoing, Dobbs' assignment of error is overruled.
 III
Dobbs' assignment of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF and YOUNG, JJ., concur.
Copies mailed to:
John H. Rion
David W. Cox
Hon. Judson Shattuck
[1] In effect, the magistrate indicated that Brian was actually born on October 19, 1980, rather than on October 19, 1979. This is somewhat surprising, since Guthrie never claimed in her objections to the magistrate's decision that the magistrate had used an incorrect birth date for Brian. Unfortunately, the confusion over the actual year of Brian's birth was never clarified by the parties. In any event, Dobbs has not raised this specific issue on appeal, and our decision is not affected in any way by the confusion surrounding Brian's date of birth.