Filed 8/31/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WILFRED RIVERA,<br><br>    Plaintiff, Cross-defendant and Respondent,<br><br>        v.<br><br>ROBERT SHIVERS et al.,<br><br>    Defendants, Cross-complainants and Appellants. | G057919<br><br>(Super. Ct. No. 30-2015-00783301)<br><br>O P I N I O N |

          Appeal from an order of the Superior Court of Orange County, Derek W. Hunt, Judge. Reversed and remanded with instructions.

          John A. Bunnett, for Defendants, Cross-complainants and Appellants.

          Natalie Panossian-Bassler, for Plaintiff, Cross-defendant and Respondent.

## INTRODUCTION

Arbitration is a recognized method of dispute resolution created by one of two means – contract or statute. The differences are important. Here we are called upon to determine whether an arbitration originally statutory in nature morphed into a contractual arbitration as the result of a vague stipulation by counsel for the parties. The stipulation failed to specify whether the parties had agreed to binding or nonbinding arbitration. Nevertheless, neither side ever seems to have entertained the notion that the completed arbitration was anything but binding, and treated it as such. The trial judge, however, had other ideas, deciding on his own that the arbitration was not what the parties intended, a conclusion he derived from their actions rather than their explicit words. As a result, he denied the appellants' petition to confirm, vacated the award, and set a trial date in the case. We reverse and remand with instructions to confirm the award.

## FACTS

Beginning in 2008, appellants Robert Shivers and Linda Shivers rented a residential property in La Habra from respondent Wilfred Rivera. Almost seven years later, Rivera filed an unlawful detainer action against Mr. and Mrs. Shivers, alleging they had not paid rent. He later amended his pleading to add causes of action based on the allegation they had damaged the property and taken appliances when they vacated it. Mr. and Mrs. Shivers filed a cross-complaint, alleging Rivera had failed to make repairs to the property and had left it untenantable.

The case was originally assigned to limited civil jurisdiction but was later reclassified to unlimited civil. Upon reassignment, the new trial judge ordered counsel to meet and confer regarding the appointment of a referee under Code of Civil Procedure[1] section 638, and a status conference on the subject was scheduled for March 19, 2018.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Rivera sought leave to amend the complaint to add Mr. and Mrs. Shivers' three children, Courtney, Jacqueline, and Andrew,[2] because they were also allegedly liable under the parties' rental agreement.  Mr. and Mrs. Shivers opposed this motion.  At the status conference, the parties advised the court they could not agree on a referee.  The court took the matter under submission, but warned that a referee would be appointed if the parties could not agree on one.

Thereafter, in a minute order dated April 19, 2018, the trial court, instead of appointing a referee, sua sponte ordered the matter to judicial arbitration.  The motion for leave to amend the complaint was heard and denied, and the parties advised the court they had stipulated to Lawrence A. Strid as their judicial arbitrator.

Undeterred by the denial of his motion for leave to amend, Rivera filed a Doe amendment to the complaint, adding the Shivers children as defendants.  Mr. and Mrs. Shivers moved to strike the amendment, and a hearing was scheduled and later continued.  When the hearing was finally held on September 7, 2018, the trial court took the motion to strike off calendar, pending completion of the arbitration or reference.

Another scheduled status conference took place approximately three months later, at which time counsel informed the trial court that arbitration before a retired judge, the Honorable Dennis Choate, at ADR Services, Inc., was set to proceed on January 30, 2019.  The court continued the status conference to February 11, 2019.  Several days later, however, one of the Shivers children filed a motion to dismiss the case against all three children for failure to prosecute; one of her siblings joined that motion.

The Shivers children's motion was heard prior to the date set for the arbitration before Judge Choate.  The trial court took the motion off calendar, stating the parties had ignored its previous orders sending the matter to "non-statutory arbitration"

_____

2       We will refer to Courtney, Jacqueline, and Andrew as the "Shivers children" for purposes of clarity.

3

and staying the litigation pending the outcome of the arbitration.[3] As a result of what it viewed as the flouting of its previous orders, the trial court set an order to show case regarding dismissal of the underlying case for failure to prosecute the arbitration. That hearing was scheduled to take place on February 4, 2019 - a few days after the arbitration before Judge Choate was set to proceed, but prior to the February 11 status conference.

The arbitration before Judge Choate commenced as scheduled on January 30, 2019, but was not completed until February 7, 2019. In the intervening time, the order to show cause hearing was held, and the parties advised the trial court the arbitration was in progress. Consequently, the trial court set a status conference for April 8, 2019, noting in the minute order the following: "Pursuant to stipulation of parties, arbitration is proceeding as binding arbitration."

On March 13, 2019, Judge Choate issued his arbitration findings, which were in Mr. and Mrs. Shivers' favor. The result appeared largely to be based on Judge Choate's conclusion Rivera was combative, untruthful, and not credible as a witness. Judge Choate ordered that Mr. and Mrs. Shivers recover $22,500 in damages and that Rivera take nothing. Additionally, he awarded them a sizeable amount in attorney fees and costs as prevailing parties.

Judge Choate did not file the award with the court. Rather, Mr. and Mrs. Shivers filed a petition on April 3, 2019 to confirm the award, citing section 1285.4. The petition included a copy of an undated stipulation signed only by counsel agreeing to "arbitrate the pending action." The same day, the Shivers children refiled their motion to dismiss. Both the petition to confirm and the motion to dismiss were scheduled to be heard on the same day.

The court held its planned status conference on April 8, 2019, and counsel advised that the "binding arbitration" had been "completed with an award." Counsel also

---

[3]    Despite this statement in the minute order, we have found no evidence in the record that the trial court officially pronounced the case stayed pending arbitration.

4

informed the court of the upcoming hearing on the petition to confirm and motion to dismiss.

On June 3, 2019, Rivera filed an opposition to the petition to confirm, arguing that Judge Choate had failed to disclose that he had a professional mentoring relationship at one time with the Shivers' counsel's father, a late judge of the Los Angeles County Superior Court. Rivera argued that Judge Choate was biased and asked the trial court to vacate the March 13, 2019 award and to order the parties to arbitrate before a new arbitrator. Rivera attached to his opposition Judge Choate's disclosure statement, which did not disclose this relationship.

In their reply brief, Mr. and Mrs. Shivers argued that Rivera's request to vacate the award was untimely because it was not filed within 10 days of the petition to confirm, as is required under section 1290.6. They also argued that Judge Choate was unaware that his former mentor was counsel's father until opening arguments were to begin, at which time he disclosed the relationship, and Rivera raised no objection.

The trial court granted the Shivers children's motion to dismiss. However, it denied Mr. and Mrs. Shivers' petition to confirm and set a trial date in the case. At the hearing, the trial court expressed concern that the stipulation for arbitration was entered into by counsel rather than the parties and concluded the arbitration had been nonbinding. Mr. and Mrs. Shivers promptly appealed the ruling.

**DISCUSSION**

Where a party files a petition to confirm an arbitration award pursuant to section 1285 et seq., "the court shall confirm the award as made" unless it "vacates the award or dismisses the proceeding." (§ 1286.) To the extent the trial court makes findings of fact in this decision, "we affirm the findings if they are supported by substantial evidence," but if "the trial court resolved questions of law on undisputed facts, we review the trial court's rulings de novo." (*Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 11-12.) Here, neither party disputes the facts in the

5

record and so the trial court's rulings present pure questions of law which we review de novo.

## I.    Judicial or Contractual Arbitration

One major point of confusion was whether the arbitration before Judge Choate was judicial or contractual in nature. The distinction is critical. Contractual arbitration is regulated by section 1280 et seq. and "generally results in a binding and final decision." (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 342.) Except as provided by sections 1286.2 and 1286.6, the awards resulting from such arbitrations are not subject to judicial review. (*See Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 12-13 (*Moncharsh*).)

By contrast, the statutory system of judicial arbitration, governed by section 1141.10 et seq., "generally does not result in a binding or final decision . . . but instead allows a trial de novo at the election of any party by timely request therefor[.]" (*Mercury Ins. Group v. Superior Court, supra,* 19 Cal.4th at p. 343.) Such a request must be filed within 60 days of "the date the arbitrator files the award with the court." (§ 1141.20, subd. (a).) Thus, a great deal hinges on the characterization of the proceeding as judicial or contractual.

There is one attribute shared by judicial and contractual arbitration - the parties can voluntarily submit to either. (§§ 1141.12, 1281.) Contractual arbitrations are, as their moniker suggests, always a matter of agreement. And while judicial arbitrations can be stipulated or mandatory, the court's power to order the parties to judicial arbitration is limited. In superior courts with more than 18 judges, it may be ordered in "all *nonexempt* unlimited civil cases . . . if the amount in controversy, in the opinion of the court, will not exceed fifty thousand dollars ($50,000) for each plaintiff." (§ 1141.11, subd. (a), italics added.) But significantly for our purposes, unlawful detainer actions are exempt. (See § 1141.15; see also Cal. Rules of Court, rule 3.811, subd. (b)(4).)

6

Initially, the trial court indicated its intention to send the case to a referee under sections 638 and 639, but it shortly changed its mind and ordered the case to judicial arbitration. The parties proceeded on that assumption and stipulated to a judicial arbitrator. However, events stalled when Rivera decided to add the Shivers children as defendants, and several months were consumed with Mr. and Mrs. Shivers' attempts to nullify that addition. At some point during the delay, Mr. and Mrs. Shivers and Rivera stipulated to "arbitrate." The stipulation did not clearly indicate what type of arbitration was contemplated, thus leaving ambiguous the question of whether the parties stipulated to judicial or contractual arbitration.

We nevertheless have some clues as to the proper categorization of the arbitration. The stipulation referenced Judge Choate of ADR Services, Inc., rather than Mr. Strid. Additionally, the parties informed the court at the February 2019 order to show cause hearing that the arbitration, then in progress, was proceeding as a binding arbitration pursuant to their stipulation. The point was memorialized in the court's minute order. Upon completion of the arbitration, Judge Choate framed his findings as an order and served the document on both parties, without filing it with the court. Such filing would have been necessary to trigger Rivera's window to request trial de novo under section 1141.20, subdivision (a), were it a judicial arbitration. Rivera never filed a request for trial de novo. Instead, Mr. and Mrs. Shivers filed a petition to confirm the award under the statutory framework for contractual arbitration – a step they would not have needed to take had the arbitration been judicial in nature. Rivera did not oppose the petition on the basis that the arbitration was judicial. He opposed confirmation on the ground that Judge Choate was biased. Clearly, both sides thought the arbitration was contractual and binding.

The trial court disagreed, stating "there's no basis for regarding this as a binding arbitration" because the arbitration "was ordered by me, the judge. Not by the

7

parties.  And that didn't change when the parties stipulated to move from Strid to Choate."

This was incorrect.  Essentially, the trial court believed that the arbitration before Judge Choate was a mandatory, nonbinding judicial arbitration.  But it could not have been.  The court was without authority to order mandatory judicial arbitration since, as noted above, unlawful detainer cases are exempt from the procedure.  In any event, litigants are always free to voluntarily submit their dispute to arbitration on their own terms.  They may turn to contractual arbitration after a dispute has arisen.  (See *Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 387; see also *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 112 [speaking approvingly of "postdispute arbitration agreements" in the employment context].)  Or they might stipulate to waive trial de novo and pursue a binding arbitration under the judicial arbitration framework.  (See, e.g., *Porreco v. Red Top RV Center* (1989) 216 Cal.App.3d 113, 130-131.)  Either way, we are satisfied the stipulation made in this case was for binding arbitration.

## II.     Client Consent to Arbitrate

The trial court noted that the parties had not themselves signed the stipulation and concluded that a stipulation signed by counsel was insufficient to show an arbitration agreement.  We believe this, too, was incorrect.  "A stipulation is an agreement between counsel respecting business before the court . . ., and like any other agreement or contract, it is essential that the parties *or their counsel* agree to its terms."  (*Palmer v. City of Long Beach* (1948) 33 Cal.2d 134, 142, italics added.)  And "a stipulation of the attorneys will be presumed to have been authorized by the client" unless the opposing side and the court are aware that the client has not consented to the

stipulation.  (See *Clemens v. Gregg* (1917) 34 Cal.App. 245, 253, citing *Knowlton v. Mackenzie* (1895) 110 Cal. 183, 188.)[4]

This principle applies even though the stipulation in this case was for binding arbitration and the waiver of a judicial forum.  To be sure, "'the implied authority of an attorney ordinarily does not extend to the doing of acts which will result in the surrender or giving up any substantial right of the client.'"  (*Redsted v. Weiss* (1945) 71 Cal.App.2d 660, 663; see also *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 407-408 (*Blanton*) [noting that "'attorney does not have implied plenary authority to enter into contracts on behalf of his client. [Citations.]'"].)  But even an unauthorized act by an attorney concerning substantial rights can be later ratified by the client and thus bind him or her.  (See *Blanton*, *supra*, 38 Cal.3d at p. 408; see also *Caro v. Smith* (1997) 59 Cal.App.4th 725, 732 [client's express assent to binding arbitration and acquiescence without objection "more than sufficient to establish ratification."])

In *Blanton*, there was no act of ratification.  The plaintiff's attorney entered into a stipulation for binding arbitration without her knowledge and consent, and when plaintiff discovered this, she immediately objected and fired the attorney.  (*Blanton*, *supra*, 38 Cal.3d at p. 400.)  She then substituted new counsel and sought to invalidate the stipulation, arguing she had never given her consent to it.  (*Ibid*.)  Here, in stark contrast, the record shows no evidence either side ever objected to the stipulation or to the arbitration itself.  Perhaps most tellingly, neither side argued, in the trial court or on appeal, that the stipulation to binding arbitration lacked consent.  It was the trial court's

---

4       Under section 283, an attorney stipulation "1. . . . entered upon the minutes of the court" or "by . . . agreement filed with the clerk" presumptively binds the client.  While we recognize that the stipulation here was mentioned in the trial court's minute order for the order to show cause hearing, the impact of this language is unclear.  There is no evidence that the written stipulation was handed to the trial court or orally recited to the trial court in order that its terms could be "entered upon the minutes of the court."  The existence of the stipulation may simply have been reported to the court.  The record does not reflect that the written stipulation itself was filed with the court prior to the arbitration.

decision to throw out the stipulation.[5]  But "[a] court is free to disregard a stipulation only if it is 'illegal' or 'contrary to public policy.' [Citations.]"  (*Estate of Burson* (1975) 51 Cal.App.3d 300, 306.)  This stipulation was neither.

We recognize the observation made in *Sanker v. Brown* (1985) 167 Cal.App.3d 1144 (*Sanker*) that "[a]n attorney's mere assertion of authority to waive a trial de novo on behalf of his client cannot be relied upon[,]" and that arbitration stipulations should include signature lines for the clients themselves.  (*Id.* at p. 1147.)  We have no quibble with this advice.  Indeed, had counsel in this case included signature lines in the stipulation for their clients, the present appeal may not have been necessary.  Even so, context matters.  *Sanker* involved a party who had requested trial de novo and disavowed the stipulation signed by his counsel.  (*Id.* at p. 1146.)  He thought the arbitration was only "advisory" in nature, and not binding.  (*Ibid*.)  The failure of counsel in *Sanker* to obtain his client's signature on the stipulation was thus fatal to its validity.  In contrast, here, the parties' conduct was always consonant with a binding arbitration, and thus the failure to obtain the clients' signatures on the stipulation was harmless.

## III.   Arbitrator Bias

Given our determination the parties did indeed stipulate to binding arbitration, the only issue remaining is the one raised by Rivera: should the arbitration award have been vacated based on evidence of bias on Judge Choate's part?  Mr. and Mrs. Shivers contend the issue should not even be considered, given that Rivera's request to vacate was untimely pursuant to section 1290.6, which required him to respond to the petition within 10 days.  To support this point, Mr. and Mrs. Shivers cite *De Mello v. Souza* (1973) 36 Cal.App.3d 79, in which the following was stated:

"Under a well delineated statutory scheme the parties to an arbitration may seek correction of the award first by filing an application to the arbitrator within 10 days

---

[5]      The trial judge was twice made aware that the parties viewed the arbitration as binding.  There is no evidence in the record that he interjected a different view on those occasions.

10

after the service of award (§ 1284). [Fn. omitted.]  As a second step, the parties may petition the court to confirm, correct or vacate the award (§ 1285). Vacation or correction of an award may also be requested from the court by way of a response filed to a petition to confirm the award.  However, while a petition to confirm an award may be served and filed within four years, the petition to vacate or correct an award *must* be served and filed within 100 days after the service of the award on the petitioner (§ 1288; *Archuleta v. Grand Lodge etc. of Machinists* (1968) 262 Cal.App.2d 202 . . .).  The same 100-day limitation applies when vacation or correction of the award is sought by response. . . .  To this latter rule there is only one exception.  When the party petitions the court to confirm the award before the expiration of the 100-day period, respondent may seek vacation or correction of the award by way of response only if he serves and files his response within 10 days after the service of the petition (§ 1290.6). Unless the response is duly served and filed, under section 1290 the allegations of the petition are deemed to be admitted by respondent [citation]." (*De Mello v. Souza, supra,* 36 Cal.App.3d at p. 83; accord, *Oaktree Capital Management, L.P. v. Bernard* (2010) 182 Cal.App.4th 60, 66.)  In this case, Rivera filed his response containing the request to vacate within the 100-day period under section 1288.2, but beyond the 10-day period under section 1290.6.

The court's power to vacate an arbitration award is governed by sections 1286, 1286.2, and 1286.4.[6]  Section 1286 describes the powers of the trial court when presented with a petition – it can confirm the award, correct it and confirm as modified, vacate the award, or dismiss the proceeding.  Section 1286.2 provides the grounds that may be used "[s]ubject to [s]ection 1286.4" to vacate an award.  The one pertinent here, subdivision (a)(6), allows the court to vacate when an arbitrator "either: (A) failed to

---

[6]     Rivera cites the Federal Arbitration Act (9 U.S.C. §1 et seq.) (FAA), and cases decided under it, in support of vacating the award.  However, the FAA applies when an arbitration is related to a transaction arising out of interstate commerce.  (See 9 U.S.C. §§ 1, 2.)  This lawsuit has no relationship to interstate commerce so the FAA would not apply to the arbitration unless the parties explicitly agreed that it would.  There is no indication from the record that they did.

disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in [s]ection 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision." (§ 1286.2, subd. (a)(6).) Section 1286.4 conditions the court's power to vacate on the petition or response requesting such relief being "duly served and filed." (§ 1286.4, subd. (a).)

Because Rivera's response to the petition to confirm was not filed and served within 10 days of the petition, it was not "duly served and filed," and thus the trial court had no authority to hear it. But even if the trial court had such authority, Rivera's request to vacate lacked merit.

"Every reasonable intendment is indulged to give effect to arbitration proceedings; the burden is on the party attacking the award to affirmatively establish the existence of error by a proper record." (*Lopes v. Millsap* (1992) 6 Cal.App.4th 1679, 1685.) The words "by a proper record" are particularly apropos here. Rivera failed to create one.[7]

"[S]ection 1286.2, subdivision (a)(6)(A), provides for vacatur only where the arbitrator fails to disclose a ground for disqualification 'of which the arbitrator was *then aware*.'" (*ECC Capital Corp. v. Manatt, Phelps & Phillips, LLP* (2017) 9 Cal.App.5th 885, 902, italics added.) The only evidence of bias Rivera submitted was a declaration from his attorney, in which she averred that Judge Choate told counsel after a brief break during the arbitration that the Shivers' counsel's father had been a mentor to him as a young prosecutor in Los Angeles. Rivera introduced no evidence that Judge Choate was aware counsel was the late judge's son at the time he made his required

---

[7] Even had he attempted to create a proper record on this issue, Mr. and Mrs. Shivers correctly point out that Rivera's responding brief largely lacked citations as required by California Rules of Court, rule 8.204, subdivision (a)(1)(C).

disclosures prior to the arbitration. Thus section 1286.2, subdivision (a)(6)(A) would not apply.

Nor did Rivera submit evidence that he moved to disqualify Judge Choate upon learning of this prior relationship with counsel's father, as is required to invoke section 1281.91. Under section 1281.91, subdivision (c), even when an arbitrator makes a "material omission or material misrepresentation in his or her disclosure," as Rivera alleges was the case here, "in no event may a notice of disqualification be given after a hearing of any contested issue of fact relating to the merits of the claim or after any ruling by the arbitrator regarding any contested matter." Rivera submitted no evidence that he served a notice of disqualification prior to the conclusion of the arbitration.

Rivera cites *Commonwealth Coat. Corp. v. Continental Cas. Co.* (1968) 393 U.S. 145, 149, for the notion that an arbitrator's failure to notify the parties of any information tending to create an impression of bias is grounds for vacatur. But there is no evidence Judge Choate failed to notify the parties of relevant information. To the contrary, the only reason that Rivera knew about the information was because Judge Choate disclosed it to the parties, albeit after the arbitration proceedings had commenced. Rivera apparently did nothing in response to this information.

Rivera argues he could not have raised any substantial objection to the bias issue without incurring the wrath of the trial court, given that there was a pending order to show cause hearing at which his case might have been dismissed if the arbitration was not complete. We disagree that the pending order to show cause hearing required him to keep mum on his concerns about arbitrator bias. The trial court set the order to show cause because it felt the parties had "fail[ed] to pursue the underlying arbitraton." But the parties very clearly *had* been pursuing the underlying arbitration, and both parties reported as much to the trial court at the order to show cause hearing. There could not have been any harm, therefore, if Rivera had made the objections necessary to ensure impartiality. Indeed, upon learning of the potential basis for disqualification, Rivera

13

could have immediately moved to disqualify Judge Choate in the arbitration proceeding, then sought relief in the trial court prior to the order to show cause hearing. He did not do this, but instead proceeded quietly with arbitration to its unfavorable outcome. Not having acted to protect his rights before that unfavorable outcome, he cannot seek to undo the arbitration after the fact.

Finally, Mr. and Mrs. Shivers request that we include Rivera's alias in the judgment to be entered. While they made this request in the trial court, it was mooted by the trial court's denial of their petition to confirm, and never addressed. We decline to review an issue the trial court did not decide. (*See Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2015) 234 Cal.App.4th 459, 467, fn. 2.) The trial court is to resolve this issue on remand.

## DISPOSITION

The order denying the petition to confirm arbitration award is reversed and remanded to the trial court with the instruction that the arbitration award be confirmed. Appellants will recover their costs on appeal.


                                         BEDSWORTH, ACTING P. J.

WE CONCUR:


THOMPSON, J.


GOETHALS, J.

14