ADKINS et al., Appellants,

v.

ESTATE OF PLACE et al., Appellees.

[Cite as *Adkins v. Estate of Place,* 180 Ohio App.3d 747, 2009-Ohio-526.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 08–CA–73.

Decided Feb. 6, 2009.

748

The Donahey Law Firm, and T. Jeffrey Beausay, for appellants.

Christopher W. Carrigg and Michael C. Mahoney, for appellee Franco J. Orefince.

Wiles, Boyle, Burkholder & Bringardner, Co., L.P.A., Mark J. Sheriff, and Alicia E. Zambelli, for involuntary appellee Auto–Owners Ins. Co.

Zeehandelar, Sabatino & Associates, L.L.C., and Steven J. Zeehandelar, for involuntary appellee State Farm Mutual Auto Ins. Co.

FAIN, Judge.

{¶ 1} Plaintiffs-appellants, Mary and Tim A. Adkins, appeal from a judgment entered by the trial court to enforce a purported settlement agreement between them and defendant-appellee Franco Orefice, administrator of the estate of Verlin J. Place, whereby the Adkinses would receive $20,000 from the estate. The Adkinses contend that the trial court erred by entering the judgment without a hearing, because there is a genuine dispute whether they ever entered into the settlement agreement. Orefice contends that the Adkinses' attorney, T. Jeffrey Beausay, who agreed to the $20,000 settlement, had apparent authority to enter into the settlement agreement on behalf of the Adkinses.

{¶ 2} One might think that an attorney retained to represent a client in connection with a matter in litigation would have apparent authority to settle that matter on behalf of the client, but the rule in Ohio is clearly otherwise. There may be an issue of fact whether the Adkinses' attorney had actual authority to enter into the settlement agreement. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

I

{¶ 3} Mary Adkins was injured when a car in which she was a passenger was struck by a car being driven by Place, who allegedly ran a red light. The Adkinses brought this action against Place for injuries and lost wages Mary Adkins sustained as a result of the collision and for Tim Adkins's loss of services and consortium. When the Adkinses discovered that Place was deceased, Orefice, as administrator of Place's estate, was substituted as defendant.

{¶ 4} The events giving rise to the present controversy are set forth in an affidavit filed in the trial court by Beausay, the Adkinses' attorney, the text of which is as follows:

{¶ 5} "1. I am trial counsel for plaintiffs in the above case. This case arises from a motor vehicle accident that occurred on May 22, 2004. I just recently took over the case from attorney David Kiger. Also, two insurance companies with subrogation liens recently were ordered added as parties.

{¶ 6} "2. Settlement discussions were ongoing right up until the deposition of Dr. Eric Smith on June 20. A new offer was made by defendant right before said deposition, and the offer was relayed by telephone to our clients.

{¶ 7} "3. During Dr. Smith's deposition, Mr. Adkins left a message on my cell phone, and stated that he and his wife 'would like to go ahead with it,' or 'we would like you to go ahead with it,' or words to that effect. I interpreted the

message to mean that they wanted to go ahead with the *settlement*; they actually meant that they wanted to go ahead with the deposition and trial.

{¶ 8} "4. I called Mr. Carrig [who represented the defendant] and stated that the case was settled. Mr. Carrig said he would call the court and notify the court that the case was settled.

{¶ 9} "5. On June 27 at approximately 2:00 p.m., Mr. Adkins called me, and stated that he was expecting to go to trial on Monday, June 30. I explained to him that the case was settled at his direction. He was extremely surprised by this, and explained that, in his voice mail message, he meant for the deposition and trial to go forward, not the settlement.

{¶ 10} "6. I immediately contacted Mr. Carrig and the court." (Emphasis sic.)

{¶ 11} On July 7, 2008, the Adkinses moved to reinstate the case on the trial docket. Orefice opposed this motion and moved, instead, to enforce the settlement. Without a hearing, the trial court overruled the Adkinses' motion, and sustained Orefice's motion to enforce the settlement agreement. The trial court entered the following judgment:

{¶ 12} "This Court, having fully considered Plaintiffs' Motion to Reinstate Case to Trial Docket and Defendant Estate of Verlin J. Place's Cross–Motion to Enforce the Settlement, hereby finds that Plaintiffs' motion is not well-taken and thus is denied in its entirety. The Court further finds that Defendant's cross-motion is well-taken, and is hereby granted in its entirety.

{¶ 13} "**ORDERED**, Plaintiffs' motion is DENIED, and Defendant Estate of Verlin J. Place's cross-motion is GRANTED; thus, Plaintiffs are ordered to comply; with all terms of the agreed-upon settlement in the amount of $20,000.00." (Boldface sic.)

{¶ 14} Subsequently, the trial court entered a modification of its judgment, as follows:

{¶ 15} "This matter was before the Court on plaintiff's motion for clarification of the Court's August 4, 2008 Entry ordering plaintiffs to comply with all terms of the agreed upon settlement in the amount of $20,000.

{¶ 16} "The Court most certainly understands that there are four claimants in this case: (1) Mary Adkins, (2) Tim Adkins, (3) State Farm, and (4) Auto–Owners.

{¶ 17} "The Court will not, and cannot, order American Family to do anything since any and all claims against that entity were dismissed by way of Entry dated May 18, 2007.

{¶ 18} "The terms of the settlement are as follows: The Estate of Verlin Place is to pay plaintiffs $20,000 forthwith. State Farm and Auto–Owners, as subrogat-

ed entities, are to be reimbursed from that $20,000 for benefits they paid to or on behalf of the plaintiffs. In accordance with documents filed in the case, $6,191.12 is due and owing State Farm, leaving a balance of $13,808.88. From this balance, plaintiffs are to reimburse Auto–Owners for benefits it paid to or on behalf of the plaintiffs. All remaining funds, less agreed upon attorney fees, are to be distributed directly to plaintiffs.

{¶ 19} "IT IS SO ORDERED."

{¶ 20} From the judgment of the trial court, the Adkinses appeal.

## II

{¶ 21} The Adkinses' sole assignment of error is as follows:

{¶ 22} "The trial court erred in granting defendant's motion to enforce settlement."

{¶ 23} The basis, both in the trial court and on appeal, for Orefice's argument that the $20,000 settlement should be enforced, is that Beausay, the Adkinses' attorney, had apparent authority to enter into a settlement agreement on behalf of his clients, regardless of whether his clients ever gave him actual authority to do so.

{¶ 24} "Under an apparent-authority analysis, the acts of the principal, rather than the agent, must be examined. *Master Consol. Corp. v. BancOhio Natl. Bank* (1991), 61 Ohio St.3d 570, 576–577, 575 N.E.2d 817. For the principal to be liable, the principal's acts must be found to have clothed the agent with apparent authority. Id." *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, ¶ 56.

{¶ 25} "The apparent power of an agent is to be determined by the act of the principal and not by the acts of the agent; a principal is responsible for the acts of the agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of the authority and not where the agent's own conduct has created the apparent authority." *Logsdon v. Main–Nottingham Invest. Co.* (2d Dist.1956), 103 Ohio App. 233, 242, 3 O.O.2d 289, 141 N.E.2d 216. See also 3 Ohio Jurisprudence 3d 96, Agency and Independent Contractors, Section 73.

{¶ 26} In the case before us, the only act that the Adkinses took that arguably clothed Beausay with apparent authority to enter into a settlement agreement on their behalf was to retain him as their attorney to represent them in this litigation. We are sympathetic to Orefice's argument that the mere act of retaining an attorney to represent a client with respect to matters in litigation, without more, ought to be enough for an adverse party, or a third party, to

believe reasonably that the attorney has authority to enter into a settlement of the matters in litigation. But that does not seem to be the law in Ohio.

{¶ 27} In *Morr v. Crouch* (1969), 19 Ohio St.2d 24, 48 O.O.2d 43, 249 N.E.2d 780, Ruth Crouch owned land that was the subject of an appropriation action. Her attorney, her husband (who was not an owner of the land), and the assistant attorney general representing the state met in chambers and agreed to settle the appropriation action for $14,200. The attorney representing Crouch mistakenly believed that he had her authority to settle the action. Crouch moved to vacate the judgment, then died, and her husband was substituted as the executor of her estate. The Supreme Court of Ohio held that "an attorney who is without specific authorization has no implied power by virtue of his general retainer to compromise and settle his client's claim or cause of action." Id. at 27, 48 O.O.2d 43, 249 N.E.2d 780.

{¶ 28} We followed *Morr v. Crouch* in *Brotherton v. Bules* (Jan. 30, 1981), Clark App. No. 1440, 1981 WL 5323. See also *Saylor v. Wilde*, Portage App. No. 2006-P-0114, 2007-Ohio-4631, 2007 WL 2579396.

{¶ 29} Of the cases cited by Orefice, the most troublesome is *Argo Plastic Prods. v. Cleveland* (1984), 15 Ohio St.3d 389, 15 OBR 505, 474 N.E.2d 328. In that case, a default judgment was rendered against the city of Cleveland as to liability. While a damages hearing was pending, the city attorney settled with the plaintiff for $553,673.74, and judgment was entered against the city in that amount. Three months later, the city moved for relief from the judgment, under Civ.R. 60(B), contending, among other things, that the city attorney only had authority to settle the action up to $2,500. The Supreme Court of Ohio held that the city was not entitled to relief under Civ.R. 60(B), opining as follows:

{¶ 30} "The city may indeed have been factually surprised, perhaps even shocked, that its counsel, who supposedly only had authority to settle a case for $2,500, settled the instant lawsuit for over $500,000. Nevertheless, we hold that the city is not entitled to relief from judgment under Civ.R. 60(B) pursuant to *GTE* [*Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113], *supra*.

{¶ 31} " * * *

{¶ 32} "In our view, the principle expressed in *GTE, supra*, with respect to excusable neglect under Civ.R. 60(B)(1), applies equally to a claim of surprise under the same provision. For purposes of Civ.R. 60(B)(1), then, the conduct of counsel is imputed to his client. It follows that the city may not now obtain relief from judgment under Civ.R. 60(B)(1) solely upon ground of misconduct by *its own attorney*. Thus, under our holding in *GTE, supra*, any 'mistake, inadver-

tence, surprise or excusable neglect,' as set forth in Civ.R. 60(B)(1), by counsel for a party does not entitle that party to relief from judgment under the rule.

{¶ 33} "In the case *sub judice,* the city occupies the same position as did ARC Industries in *GTE, supra.* As we did in *GTE,* we therefore impute [the city attorney's] actions to the city in considering whether the city may obtain relief from judgment under Civ.R. 60(B)(1). That being the case, the city's contention that Civ.R. 60(B) relief is warranted where its attorney exceeds his settlement authority is without merit. The city's remedy, if any, lies elsewhere.

{¶ 34} "While we have sympathy for the city's situation, we feel that it would be manifestly unjust to appellants herein to vacate the judgment entered below pursuant to the settlement on the amount of damages. Using the language employed in *GTE, supra,* we would be ' "visiting the sins of * * * [the city's] lawyer upon the * * * [appellants]." ' Id. at 152, 1 O.O.3d 86, 351 N.E.2d 113. Such would run afoul of the established purpose of Civ. R. 60(B) which is to afford 'relief in the interests of justice.' *Svoboda v. Brunswick* [ (1983), 6 Ohio St.3d 348], at 351[, 6 OBR 403, 453 N.E.2d 648]. See, also, *Blasco v. Mislik* (1982), 69 Ohio St.2d 684, 687–688[, 23 O.O.3d 551, 433 N.E.2d 612]." (Emphasis sic.)

{¶ 35} Can the holding in *Argo Plastic Prods. v. Cleveland,* 15 Ohio St.3d 389, 15 OBR 505, 474 N.E.2d 328, be reconciled with the holding in *Morr v. Crouch,* 19 Ohio St.2d 24, 48 O.O.2d 43, 249 N.E.2d 780, to which it does not refer? We believe that it can. In *Argo Plastic Prods.,* the Supreme Court was at pains to note, repeatedly, that the issue under review arose in the context of a motion for relief from judgment. The judgment on the settlement in that case had already become final, so the extraordinary circumstances set forth in Civ.R. 60(B) were required to relieve the aggrieved litigant from its effects. The Supreme Court employed the familiar principle that bad lawyering is not a justification for relief, under Civ.R. 60(B), from a judgment that has become final.

{¶ 36} By contrast, the judgment on the settlement in the case before us, like the judgment in *Morr v. Crouch,* has not become final, a timely appeal having been taken from that judgment. We conclude that these two cases—*Morr v. Crouch* and *Argo Plastic Prods. v. Cleveland*—are distinguishable upon the ground that the former involved a judgment that had not yet become final, while the latter involved a judgment that had become final, and that we therefore need not conclude that in deciding *Argo Plastic Prods.,* the Ohio Supreme Court implicitly overruled *Morr v. Crouch.*

{¶ 37} The other cases cited by Orefice are easier to distinguish. In *Elliott v. Gen. Motors Corp.* (1991), 72 Ohio App.3d 486, 595 N.E.2d 463, in holding that an attorney's authority to settle litigation need not be express, the court merely held that where, as in that case, there is a factual dispute whether the litigant gave his

attorney *actual* authority to settle the case, an evidentiary hearing is required to resolve that issue of fact. Similarly, in *Thirion v. Neumann,* Ashtabula App. No. 2003–A–0006, 2003-Ohio-6419, 2003 WL 22844252, it was held that a factual dispute whether an attorney had actual authority to settle a case required an evidentiary hearing; and, after that hearing was held, in a subsequent appeal the same court held that there were facts in the record to support the trial court's finding that the client had, in fact, authorized his attorney to settle the case. *Thirion v. Neumann,* Ashtabula App. No. 2004–A–0032, 2005-Ohio-4486, 2005 WL 2077253. Finally, in *Garrison v. Daytonian Hotel* (1995), 105 Ohio App.3d 322, 663 N.E.2d 1316, a decision of this court, the issue was whether the actual authority the client had given the attorney to settle the case for $20,000 had expired as a result of an intervening counteroffer. We held that the intervening counteroffer did not extinguish the authority that the client had previously given the attorney, which the client had not revoked.

{¶ 38} One theme running throughout Orefice's brief is the suggestion that an attorney's authority to negotiate on behalf of his client necessarily implies the authority to enter into a settlement agreement on behalf of his client. In our view, these authorities are not the same. This is illustrated by a plausible, at least, if not familiar, scenario in which the attorney for the injured plaintiff rejects the insurance company's offer of $50,000 to settle the case by saying to the insurance company's attorney: "See if your client can come up with $100,000; if it will offer that amount, I will recommend to my client that she take it." In this scenario, it is clear that both attorneys are negotiating on behalf of their clients; it is equally clear that neither attorney yet has authority from the client to enter into a settlement agreement. Thus, the authority to negotiate is not the same as the authority to enter into a settlement agreement.

{¶ 39} Finally, in *Rulli v. Fan Co.* (1997), 79 Ohio St.3d 374, 683 N.E.2d 337, and in several of the cases cited above, it has been held that when there is a factual dispute concerning the existence of a settlement agreement, an evidentiary hearing is necessary. For this reason, we conclude that it is premature to determine that Orefice is not entitled to enforce the alleged settlement agreement. There is a potential dispute in this case whether the Adkinses gave their attorney actual authority to settle this litigation. The trial court has not held an evidentiary hearing on that factual issue. Although we have concluded that Beausay was without apparent authority to enter into the settlement agreement, it would be appropriate for the trial court to hold an evidentiary hearing, unless the parties stipulate to the relevant facts, to determine whether Beausay had actual authority from his clients to enter into the settlement agreement on their behalf.

{¶ 40} The Adkinses' sole assignment of error is sustained.

## III

{¶ 41} The Adkinses' sole assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

DONOVAN, P.J., and BROGAN, J., concur.