[Cite as *Bromley v. Seme*, 2013-Ohio-4751.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| EDNA BROMLEY, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-G-3115** |
| BARBARA A. SEME, et al., | : | |
| Defendants, | : | |
| BRENT MILLER, | | |
| Defendant-Appellant. | | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 09M001258.

Judgment: Affirmed.

*Kristen L. Fitchko*, and *David E. Butz*, Krugliak, Wilkins, Griffiths & Dougherty Co., LPA, 4775 Munson Street, N.W., P.O. Box 36963, Canton, OH 44735-6963 (For Plaintiff-Appellee).

*Michael J. Feldman*, Lallo & Feldman Co., L.P.A., Interstate Square Building I, 4230 State Route 306, Suite #240, Willoughby, OH 44094. (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This accelerated-calendar appeal is from a final judgment of the Geauga County Court of Common Pleas. Appellant, Dr. Brent Miller, seeks reversal of the trial court's decision granting appellee, Edna Bromley's motion to enforce a settlement agreement between the two parties. Essentially, appellant contends that the court erred

in finding that his attorney had express or apparent authority to negotiate an agreement on his behalf.

{¶2}   In October 2009, appellee initiated the underlying case against appellant, his former wife, Susanne Seme, and his former mother-in-law, Barbara Seme. Appellee's complaint raised three claims sounding in fraud, unjust enrichment, and interference with expectancy of inheritance.   Each claim was predicated upon the general allegation that the defendants engaged in a scheme to wrongfully take certain funds from appellee.

{¶3}   After the proceeding was pending for a significant period, Susanne and Barbara negotiated a final settlement with appellee.   Appellant and his trial counsel, Attorney Joel Newman, did not participate in those negotiations.   Hence, the trial against appellant, the sole remaining defendant, was scheduled to go forward on Monday, July 30, 2012.

{¶4}   In the late afternoon of Friday, July 27, 2012, Attorney Newman traveled to appellant's dentistry office for the purpose of determining whether a settlement could be reached with appellee.   After a preliminary discussion between themselves, Attorney Newman called the trial judge and appellee's counsel from appellant's private office.   A telephonic conference then ensued.   At the outset of the phone call, appellant was present in the office and was aware that a settlement of the pending action was being discussed.   Despite this, on at least one occasion, appellant exited the room during the conference.

{¶5}   During the phone call, the trial judge primarily listened while the attorneys discussed the following points: (1) the total sum appellant would pay appellee under the

settlement; (2) the amount of interest appellant would pay on that sum; (3) the amount of monthly payments he would make to liquidate that sum; (4) the amount of a judgment the trial court would enter against appellant to secure payment of the debt; (5) whether appellant would be required to make financial disclosures to appellee; (6) whether appellant would be required to provide additional security on the debt; and (7) whether the debt would be dischargeable in bankruptcy. At the end of the conference, the trial judge and appellee's attorney concluded that a final settlement had been reached. As a result, the trial judge instructed the parties to appear in court the following Monday, July 30, 2012, so that the terms of the settlement could be read into the record.

{¶6} Appellee and her trial counsel were present at the scheduled "settlement" hearing. However, only Attorney Newman attended on behalf of appellant. According to appellant, he did not attend because Attorney Newman stated that his presence was unnecessary.

{¶7} At the beginning of the oral hearing, appellee's attorney said on the record that the parties had agreed to the following terms: (1) there would be a mutual release of all claims between the parties; (2) appellant would be liable to appellee for the sum of $35,000, plus 3 percent interest; (3) appellant would make monthly payments of $400 for 99 months; (4) the trial court would enter judgment against him for $50,000, to be enforced if he breached the agreement; (5) appellant would provide a financial statement on his personal and business interests; (6) appellee would be entitled to additional security on the debt; and (7) the basic debt would not be dischargeable. Once the statement of the terms was completed, appellee personally addressed the trial court, indicating that she understood the various terms and was willing to be bound.

{¶8} The trial court then asked Attorney Newman if he had spoken to appellant about the settlement agreement. In response, Attorney Newman stated that he and his client had discussed the terms "extensively," and that his client understood the nature of the agreement. The trial court further asked whether, as an officer of the court, Attorney Newman could indicate whether appellant intended to be bound by the agreement. In response, counsel emphasized that, although his client was not pleased with the outcome, he was willing to comply with the terms. In light of these assertions, the court accepted the settlement agreement and ordered the attorneys to reduce it to writing.

{¶9} Appellee's trial attorney drafted the written agreement and sent a copy of it to opposing counsel. When Attorney Newman presented the draft to his client, though, appellant refused to sign it, stating that he never expressly agreed to many of its terms. Appellant also immediately terminated Attorney Newman as his trial counsel, and hired a separate attorney to represent him in the case.

{¶10} Under the terms of the purported settlement, appellant's first monthly $400 payment was due within two days of the "settlement" hearing. When that payment was not made timely, appellee moved the trial court to enforce the agreement and compel appellant to comply with its terms.

{¶11} The trial court conducted a separate evidentiary hearing on the motion to enforce. As part of his testimony, Attorney Newman stated that, as to the majority of the proposed terms, he could recall them being discussed during the conference, and that his client had agreed to them. The only exception was the term regarding whether the debt owed to appellee would be non-dischargeable. Attorney Newman further testified that he had assumed that, even after appellee's counsel read the purported settlement

into the record during the July 30, 2012 hearing, the various terms could still be subject to additional negotiations until both parties signed the written agreement. Furthermore, appellee's counsel testified about the nature of the discussions during the telephonic conference and the events that occurred during the "settlement" hearing. Concerning the conference, appellee's counsel emphasized that there would be periodic lulls in the negotiations, indicating that Attorney Newman was discussing each proposed term with appellant.

{¶12} In response to the foregoing evidence, appellant testified that he agreed to only two terms during the telephonic conference: i.e., the amount of the debt he would owe to appellee and the amount of the monthly payment. He also testified that he did not hear the entire discussion between the attorneys because he left the room to attend to other business. Finally, appellant stated that he was not present at the "settlement" hearing because Attorney Newman told him it was not required.

{¶13} In concluding in its final judgment that appellant and appellee had entered into a binding settlement agreement, the trial court specifically found that appellant gave Attorney Newman real and apparent authority to act as his agent and settle the case. In relation to the telephonic conference, the court noted that, since appellant was aware of the purpose of the discussions, he could have informed the court or appellee's counsel if he did not agree to any particular term or if he had not given his attorney the express authority to settle. Concerning the "settlement" hearing, the trial court held that the fact that appellant chose not to attend the hearing supported the inference that he intended for Attorney Newman to speak on his behalf.

{¶14} Based upon these findings, the court granted appellee's motion to enforce

5

the settlement agreement. As part of its final order, the trial court delineated the terms of the agreement, consistent with what appellee's counsel read into the record during the "settlement" hearing.

{¶15} In challenging the trial court's decision, appellant raises one assignment of error for review:

{¶16} "The trial court committed prejudicial error in granting [appellee's] motion to enforce the settlement agreement when appellant testified he did not agree to all of said terms."

{¶17} In maintaining that appellee's motion to enforce should have been denied, appellant contends that the evidence did not support the trial court's finding that the two parties had reached an agreement regarding the terms of a settlement. As the primary basis for his argument, he states that there could not have been a meeting of the minds because the evidence supported the finding that Attorney Newman exceeded the scope of his authority in negotiating with appellee's trial counsel. In essence, appellant argues that, since his own testimony established that he did not expressly consent to many of the purported terms, Attorney Newman could not have agreed to the settlement as his agent.

{¶18} As a general proposition, the law favors the use of settlement agreements as a means of resolving pending actions. *Continental West Condo. Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502 (1996). The law also prefers that such agreements be memorialized in writing whenever possible. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶15. Nevertheless, "an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract." *Id.*

6

**{¶19}** In addressing the question of when an oral settlement agreement can be enforceable, this court has stated:

**{¶20}** "It is well-established that '[w]here the parties in an action (* * *) voluntarily enter into an oral settlement agreement *in the presence of the court*, such agreement constitutes a binding contract.' (Emphasis added.) *Spercel v. Sterling Industries, Inc.* (1972), 31 Ohio St.2d 36, * * *, paragraph one of the syllabus; * * *.

**{¶21}** "This court has held: 'Ordinarily, an in-court settlement binds the parties, even if they do not reduce it to writing.' *Triozzi-Hartman v. Hartman*, 11th Dist. No. 2006-G-2701, 2007 Ohio 5781, at ¶9, citing *Spercel*, supra.

**{¶22}** "'Where the settlement agreement is arrived at by the parties *in open court* and preserved by being read into the record or being reduced to writing and filed, then the trial judge may (* * *) approve a journal entry which accurately reflects the terms of the agreement, adopting the agreement as his judgment.' (Emphasis added.) *Bolen v. Young* (1982), 8 Ohio App.3d 36, 37, * * *." *Kolar v. Shapiro*, 11th Dist. Lake No. 2007-L-148, 2008-Ohio-2504, ¶21-23.

**{¶23}** In this case, the terms of the alleged settlement agreement were primarily discussed during the telephonic conference of July 27, 2012. Although the trial judge participated in this conference to some extent, the negotiations did not occur as part of a formal court proceeding. However, three days after the conference, a separate formal "settlement" hearing was conducted in the presence of the trial judge. Once appellee's counsel read the purported terms of the agreement into the record, appellee personally addressed the trial judge and indicated that she was willing to be bound by the terms in question. Furthermore, after stating to the trial judge that his client fully understood the

7

nature of the cited terms, Attorney Newman expressly averred that appellant intended to be bound by the agreement.

{¶24} In the days following the "settlement" hearing, appellant never signed the written copy of the settlement agreement, as drafted by appellee's counsel. Yet, in light of the case law cited in *Kolar*, the oral statement of the terms during the hearing could still constitute a binding settlement agreement if Attorney Newman had proper authority to enter into a contract on behalf of appellant. As noted above, the trial court found that Attorney Newman had both express and apparent authority to act as appellant's agent in this matter.

{¶25} "'It is well-recognized that a party may be bound by the conduct of his or her attorney in reaching a settlement.' *Saylor v. Wilde*, 11th Dist. No. 2006-P-0114, 2007 Ohio 4631, at ¶12. However, '[a]n attorney who is without special authorization has no implied or apparent authority, solely by virtue of his general retainer, to compromise and settle his client's claim or cause of action.' *Morr v. Crouch* (1969), 19 Ohio St.2d 24, * * *, at paragraph two of the syllabus; *Adkins v. Estate of Place*, 180 Ohio App.3d 747, 2009 Ohio 526, at ¶26, * * *. 'Whether a party authorized the attorney to settle the case on certain terms is a question of fact, the resolution of which by the trial court shall not be disturbed on appeal if supported by some competent, credible evidence.' *Schalmo Builders, Inc. v. Zama*, 8th Dist. No. 90782, 2008 Ohio 5879, at ¶17 * * *." (Footnote omitted.) *Promotional Products Group, Inc. v. Sunset Golf, LLC*, 11th Dist. Portage No. 2009-P-0041, 2010-Ohio-3806, ¶46.

{¶26} In *Promotional Products*, the attorney told the trial court magistrate during a "settlement" hearing that her absentee client had given her the authority to consent to

8

the proposed settlement terms. Approximately one month later, the opposing party filed a motion to enforce the settlement agreement, alleging that the attorney's client had not complied with certain terms. In the subsequent evidentiary hearing on the motion, the attorney testified that her client told her during a telephone conversation that she could go along with whatever the co-defendant thought was appropriate. However, the client testified that he never authorized the attorney to renegotiate the terms of the proposed settlement.

{¶27} In upholding the trial court's decision to enforce the settlement agreement in *Promotional Products*, this court first held that a client's express authorization to settle a pending case can be made orally outside the presence of the judge or magistrate. *Id*. at ¶52. Second, we concluded that a transcript of the "settlement" hearing, at which the attorney had stated that she had been given the requisite authorization, was sufficient to be a prima facie showing of express authorization to settle, thereby shifting the burden of proof on the authorization issue to the client. *Id*. at ¶49. Third, given the presumption that the factual findings of the magistrate or trial court on the authorization question are correct, an appellate court must defer to their determination of the credibility of the client and the attorney during the "motion" hearing. *Id*. at ¶58. Accordingly, the *Promotional Products* court affirmed the finding of express authorization to settle, and did not review the issue of whether the attorney had apparent authority.

{¶28} In our case, the transcript of the July 30, 2012 "settlement" hearing shows that Attorney Newman unequivocally averred to the trial court that: (1) he and appellant had discussed the terms of the proposed settlement extensively; and (2) appellant was willing to be bound by the settlement. Given the specific nature of Attorney Newman's

9

statements, they were sufficient to constitute a prima facie showing that appellant had expressly authorized him to agree to the six terms that were negotiated during the prior telephonic conference. As a result, even though appellee was the party who submitted the motion to enforce, the burden of proof on the authorization issue shifted to appellant for purposes of the "motion" hearing.

**{¶29}** During that hearing, appellant testified that he could not have consented to each of the terms discussed in the conference because he was not present in the office during the entire conversation. However, in light of Attorney Newman's statement at the "settlement" hearing that he and his client talked about the proposed terms extensively, the trial court could have justifiably concluded that appellant's testimony simply was not credible. That is, even if appellant did leave the office for a period while the telephonic conference was ongoing, there still was sufficient time for Attorney Newman to explain each term to appellant and obtain his consent prior to the "settlement" hearing.

**{¶30}** As a general proposition, Attorney Newman's testimony at the "motion to enforce" hearing did not support appellant's contention that he was not even aware of some of the proposed terms prior to the settlement hearing. As previously mentioned, the purported settlement consisted of six basic terms: (1) appellant would owe appellee the sum of $35,000, plus 3 percent interest; (2) he would make 99 monthly payments of $400; (3) to secure payment of the debt, a judgment of $50,000 would be rendered against him; (4) he would produce a financial statement covering all of his assets; (5) he would provide appellee additional security to ensure payment; and (6) the debt would not be dischargeable in bankruptcy. As to the first five of the terms, Attorney Newman specifically testified that appellant agreed to each during the conference. As to the last

term, he testified that he could not recall whether appellant's concurrence extended to the "non-dischargeable" issue.

{¶31} In regard to whether appellant agreed to the "non-dischargeable" term, Attorney Newman's initial testimony was that he could not recall appellant's reaction to their discussion of the issue. At that point, the trial court intervened in the questioning:

{¶32} "THE COURT: So summarize for me. What do you feel had been agreed to and ratified by [appellant]?

{¶33} "THE WITNESS: $50,000 judgment; $35,000 settlement; $400 monthly payment specified. We would give adequate security and generally financial disclosures and *that the debt itself would be non-dischargeable*."

{¶34} Immediately after the foregoing statement was made, neither the trial court nor appellee's counsel asked Attorney Newman to clarify his testimony. However, after Attorney Newman was subject to cross-examination and re-direct examination, the trial court again asked him whether it had been his "understanding that the debt was to be non-dischargeable." In response, Attorney Newman stated: "I frankly don't recall." To the extent that the latter response is consistent with Attorney Newman's initial testimony on this specific term, it conflicts with the foregoing statement that appellant *had* agreed to make the debt non-dischargeable.

{¶35} In challenging the credibility of Attorney Newman's testimony concerning the extent of appellant's prior agreement to the terms, appellant maintains that Newman made a second inconsistent statement. After questioning Attorney Newman about the telephonic conference, appellee's counsel then asked a series of queries regarding the "settlement" hearing. When Attorney Newman admitted that he never objected to any of

11

the terms that were read into the record at the "settlement" hearing, appellee's counsel asked the following:

**{¶36}** "Q. Mr. Newman, the reason why you didn't object to any of the terms that I read into the record of July 30, was because you had received authorization from your client to enter into each and every of those terms, isn't that correct?

**{¶37}** "A. No."

**{¶38}** When considered in the context of Attorney Newman's entire testimony, his response to the foregoing question cannot be interpreted to indicate that his client had not agreed to any of the basic terms. Instead, Attorney Newman was only stating that he could not say that appellant gave him authorization to agree to "each and every" of the six terms; i.e., he could not say that appellant had agreed to the term concerning whether the debt would be dischargeable.

**{¶39}** Accordingly, in relation to the specific question of what were the terms to which appellant had agreed, Attorney Newman's testimony at the evidentiary hearing was fairly consistent. The crux of that testimony was that, at some point prior to the "settlement" hearing of July 30, 2012, appellant had agreed to all of the terms which were negotiated during the telephonic conference, with the exception that he could not recall appellant's decision on the "non-dischargeable" term. Moreover, this testimony was fairly consistent with the express averments Attorney Newman made to the trial court as part of the "settlement" hearing, with the exception of the lack of recall on the discharge point. In light of this, the trial court could justifiably conclude that Attorney Newman's testimony was more credible than appellant's statement that he had agreed to only two of the six proposed terms.

**{¶40}** Furthermore, it must be emphasized that Attorney Newman did not testify that appellant never consented to the "non-dischargeable" term. Rather, he only said that he could not recall if appellant agreed to that term. Given that Attorney Newman did not raise any objection to the "non-dischargeable" term during the prior "settlement" hearing, the trial court could find that Attorney Newman's memory had been fresher at the "settlement" hearing, which was held only three days after the telephonic conference. Thus, the trial record contains some competent, credible evidence supporting the finding that appellant agreed to all six basic terms prior to the day of the "settlement" hearing, and then changed his mind at some point before the written draft of the settlement agreement could be composed.

**{¶41}** As a separate argument, appellant notes that, at various points throughout his testimony, Attorney Newman stated that the terms cited by appellee's counsel at the "settlement" hearing were not necessarily "final" because he and appellant would still have an opportunity to engage in additional negotiations. Based upon this, appellant contends that the settlement agreement was not enforceable because there was never a true meeting of the minds.

**{¶42}** When acting as the trier of fact in a given situation, the trial court has the discretion to believe all or part of a witness's testimony. *State v. Howard*, 11th Dist. Lake No. 2009-L-158, 2010-Ohio-2817, ¶33. In light of the fact that Attorney Newman made no reference to the possibility of further negotiations during the "settlement" hearing, the trial court could have rejected that aspect of his testimony as lacking in credibility under the circumstances. Moreover, as a matter of law, the mere fact that some of the terms had some degree of indefiniteness, such as what additional security

appellant would need to give, would not adversely affect the enforceability of the settlement, even if further negotiations were ultimately needed. *Kostelnik*, 2002-Ohio-2985, at ¶17.

{¶43} Taken as a whole, the record does not indicate that the trial court abused its discretion in judging the credibility of Attorney Newman and appellant, especially in light of the prior proceedings in the case. Furthermore, Attorney Newman's testimony constituted some competent, credible evidence establishing that, by agreeing to all six purported terms of the settlement agreement prior to the "settlement" hearing of July 30, 2012, appellant gave Attorney Newman the express authority to enter into the settlement in his absence. Since the trial court's judgment can be upheld on this basis alone, it is not necessary to address the separate issue of whether Attorney Newman possessed apparent authority to act as appellant's agent in consummating the settlement.

{¶44} As the trial court did not err in granting appellee's motion to enforce the parties' settlement agreement, appellant's sole assignment of error lacks merit. It is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.

14