[Cite as *Zele v. Ohio Bell Tel. Co.*, 2025-Ohio-1546.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

CHRISTINE ZELE,                                :

    Plaintiff-Appellant,              :

                              No. 114137

    v.                                           :

                                         :

THE OHIO BELL
TELEPHONE COMPANY,                     :

    Defendant-Appellee.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 1, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-956985

---

*Appearances:*

Mary Jo Hanson, LLC and Mary Jo Hanson, *for appellant*.

Littler Mendelson, P.C., Maurice Baskin, Emily Carapella,
and Amy Ryder Wentz, *for appellee*.

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Plaintiff-appellant, Christine Zele ("Zele"), appeals an order dismissing her complaint and enforcing a settlement agreement between her and defendant-appellee, the Ohio Bell Telephone Company ("Ohio Bell"). Zele claims the following errors:

1. The court abused its discretion by ruling that there was a settlement in this matter, and that no attorney fees were owed to the defendant by plaintiff. There was no settlement agreement and Ms. Zele did not sign the agreement, or sign to the term sheet.

2. The Cuyahoga County Court of Common Please abused its discretion by ruling that Ms. Zele could not have any additional time for discovery upon a change of counsel with regards to depositions.

3. The Cuyahoga County Court of Common Pleas abused its discretion by ruling that Ms. Zele's expert report could not be admitted, although it was timely filed, but it was not filed appropriately, so a simple and least restrictive result could have been correct. Plaintiff should have been able to use her expert report.

4. During the hearing in Cuyahoga County, [the trial judge] erred when she automatically denied all objections made by Zele's counsel throughout the transcript, and when she permitted all of the evidence that Ms. Zele's counsel objected to, such as 408 evidence rules violations, along with confidential communications, along with other significant communications about settlement that were permitted but that should not have been permitted.

{¶ 2} We affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} In December 2021, Zele filed a complaint against Ohio Bell, alleging claims for disability, sex, and age discrimination; sexual harassment; and retaliation under R.C. 4112.01 et seq. The complaint also asserted claims for declaratory judgment and unjust enrichment related to a provisional patent application she filed while working at Ohio Bell. Zele alleged that Ohio Bell stole an invention she developed and decided to implement it without giving her any credit for it. Finally, Zele alleged that her working conditions became increasingly hostile such that she was forced to resign in August 2020.

{¶ 4} Zele initially filed her complaint against Ohio Bell in the United States District Court. She subsequently dismissed that complaint and filed a new complaint in the Cuyahoga County Court of Common Pleas in December 2021. The common pleas court issued a case-management order in April 2022, outlining several pretrial dates including a settlement conference scheduled for May 4, 2022.

{¶ 5} On April 19, 2022, the parties voluntarily participated in private mediation via Zoom. After nearly 12 hours of negotiations, the parties, through counsel, agreed to settle the case. Per the mediator's direction, Ohio Bell's lead counsel, Attorney Amy Ryder Wentz ("Wentz"), sent an email to Zele's attorneys and the mediator at 9:12 p.m. on April 19, 2022, confirming the terms of the parties' settlement agreement. The email, known as the "term sheet," states, in relevant part:

> I am writing to confirm the key terms of the Parties' settlement agreement. Ohio Bell agrees to pay Ms. Zele $ . . . .[1] in exchange for a full release of claims and covenant not to sue; indemnification of taxes; confidentiality and a liquidated damages agreement of $ . . . . per breach plus attorney fees for having to enforce the confidentiality provision; unilateral non-disparagement as to Ms. Zele; no re-employment (although the settlement agreement will specify that the agreement does not disturb her vested benefits, if any); an agreement to arbitrate future claims, including enforcement of the agreement; and other standard terms to be agreed on in writing, including the return of all Company property (e.g., documents and records) in Ms. Zele's possession. In addition, the Company agrees to provide a neutral employment verification for Ms. Zele through the Work Number. The Company also agrees to disburse the settlement in three checks — one check to counsel for attorneys' fees and costs, one check to Ms. Zele for lost wages, and one check to Ms. Zele for emotional distress damages.

---

[1] Per the parties' agreement, the amount of money damages Ohio Bell agreed to pay is confidential.

The checks payable to Ms. Zele will be split 50/50 after deduction of attorneys' fees. The settlement payment will be reported to the tax authorities as required by law.

{¶ 6} Attorney Mark Biggerman ("Biggerman"), one of Zele's lawyers who participated in the Zoom mediation, replied to the term-sheet email at 9:20 p.m. that same evening. The reply stated, "Confirmed by Christine Zele and counsel." (Tr. 20; defendant's exhibit C; Wentz affidavit exhibit C.)[2] At Wentz's request, the mediator further confirmed that the parties' reached a settlement agreement in a separate email.[3] (Tr. 20; Defendant's exhibit C; Wentz affidavit exhibit C.)

{¶ 7} On April 26, 2022, Wentz prepared a detailed settlement agreement incorporating the terms outlined in the term sheet and sent it to Biggerman. (Tr. 23-24; Wentz affidavit exhibit A.) Biggerman confirmed receipt of the agreement and responded that he had sent it to Zele for review. (Tr. 20 and 42.)

{¶ 8} On the eve of the trial court's May 4, 2022 settlement conference, Wentz contacted the court and inquired as to whether the parties were required to attend the conference since the case had settled. The court's staff attorney advised her that the parties' were required to attend the settlement conference because no dismissal had yet been filed.

---

[2] Unless otherwise noted, reference to the Wentz affidavit refers to the affidavit attached to defendant's memorandum in support of its motion to enforce settlement agreement.

[3] The mediator again acknowledged that the case was settled when she sent her invoice to the parties with the following statement: "Thank you for allowing me the opportunity to mediate this case and I am very happy that we were able to come to a settlement."

{¶ 9} Zele's counsel represented to the court at the settlement conference that Zele was still reviewing the settlement agreement. After the settlement conference concluded, the court issued a journal entry indicating that the case had not settled and that all dates and orders remained in effect, including the June 27, 2022 trial date. The next day, Zele's lawyers filed motions to withdraw as Zele's counsel of record, stating that Zele asked them to withdraw after the settlement conference. Thereafter, Attorney Mary Jo Hanson ("Hanson") filed a notice of appearance of new counsel on behalf of Zele.

{¶ 10} Wentz informed Hanson of the private mediation. Wentz also forwarded to Hanson the email thread with the term sheet and Biggerman's confirmation of the settlement terms. (Tr. 27-28.) Hanson responded that she was operating under the court's order indicating the case had not settled. Wentz responded by forwarding to Hanson an email from the mediator confirming that the parties had reached a settlement in private mediation. Wentz also notified Hanson that Ohio Bell would pursue a claim for attorney fees incurred for having to litigate enforcement of the settlement agreement if Zele did not abide by the terms of the settlement agreement. (Tr. 31.) According to Wentz, Hanson replied that her client, Zele, did not agree to the settlement that her attorneys had negotiated on her behalf. (Tr. 31.)

{¶ 11} Ohio Bell filed a motion to enforce the settlement and for attorney fees. Meanwhile, on May 11, 2022, Hanson filed a motion to extend the discovery deadline to allow Zele to take depositions. The trial court denied the motion to

extend discovery. On May 12, 2022, Zele filed an expert report, one day after the expert-report deadline, asserting that she filed the report on the deadline and that it had been rejected due to an e-filing issue. The trial court struck the expert report as untimely filed. Thereafter, the court granted the motion to enforce the settlement agreement and awarded attorney fees in the amount of $25,000. Zele appealed, and we reversed the trial court's judgment because the trial court enforced the settlement without holding an evidentiary hearing to determine whether the parties had in fact reached a binding settlement agreement. *See Zele v. Ohio Bell Tel. Co.*, 2023-Ohio-2875 (8th Dist.) ("*Zele I*").

{¶ 12} The trial court conducted an evidentiary hearing on remand. Wentz testified at the hearing that she believed Zele's attorneys had full authority to negotiate a settlement on Zele's behalf. (Tr. 20.) Wentz authenticated the term sheet outlining the terms of the settlement and the response from Biggerman, indicating that the terms were "[c]onfirmed by Christine Zele and counsel." (Tr. 20 and 22.) Wentz also verified the attorney fees Ohio Bell incurred in litigating its motion to enforce the settlement agreement.

{¶ 13} Ohio Bell called Biggerman as a witness, and he testified that the term sheet accurately reflected the terms of the settlement agreement reached at the private mediation. (Tr. 61.) Biggerman acknowledged his April 19, 2022 email confirming the settlement and stated that he copied the mediator on the email as well. (Tr. 61.) Biggerman further stated that Zele gave him express authority to

negotiate the settlement and to transmit the email confirming the settlement. (Tr. 70.)

{¶ 14} Zele conceded at the hearing that she authorized her attorneys to negotiate the settlement of her claims. (Tr. 75.) She stated, however, that her attorneys agreed to terms that she, herself, did not agree to, and that their actions caused a breakdown in the attorney-client relationship. (Tr. 81.) Zele also stated that despite Biggerman's testimony to the contrary, he never read the terms of the term sheet to her, and she never signed the term sheet. (Tr. 86.)

{¶ 15} After hearing the evidence, the trial court again granted the motion to enforce the settlement agreement. The court also granted Ohio Bell's motion for attorney fees incurred in litigating the motion to enforce the settlement agreement. This appeal followed.

## II. Law and Analysis

### A. Enforcement of Settlement Agreement

{¶ 16} In the first assignment of error, Zele argues the trial court's finding that the parties entered into a binding settlement agreement is against the manifest weight of the evidence. She contends that because she never agreed to the terms of the settlement agreement, the trial court erred in finding that she was bound by it. Zele also argues the trial court abused its discretion in ordering her to pay the attorney fees Ohio Bell incurred in prosecuting its motion to enforce the settlement agreement.

## 1. Settlement Agreement

{¶ 17} The standard of review we apply to a motion to enforce a settlement agreement depends on the question presented. "If the question is an evidentiary one, this court will not overturn the trial court's finding if there was sufficient evidence to support such finding." *Turoczy Bonding Co. v. Mitchell*, 2018-Ohio-3173, ¶ 15 (8th Dist.), citing *Chirchiglia v. Ohio Bur. of Workers' Comp.*, 138 Ohio App.3d 676, 679 (7th Dist. 2000). "[W]here the issue is a question of contract law," this court "must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law." *Id.*, citing *Turoczy* at ¶ 15, citing *Continental W. Condo. Unit Owners Assn. v. Howard E. Ferguson Inc.*, 74 Ohio St.3d 501, 502 (1996). This appeal involves an issue of fact, namely whether Zele, through counsel, entered into a binding settlement agreement.

{¶ 18} Zele maintains she never agreed to the terms of the settlement agreement. She further argues, citing *Morr v. Crouch*, 19 Ohio St.2d 24 (1969), that her attorneys lacked authority to bind her to the agreement.

{¶ 19} In *Morr*, the Ohio Supreme Court affirmed an order vacating a journal entry of settlement involving the sale of real property because the evidence showed that no specific authority was conferred upon the attorney to act as agent for the property owner to sell the land. *Morr* at 28. The attorney who negotiated the settlement testified at a hearing on the motion to vacate the settlement that he was not given authority to sell the property or otherwise settle the dispute. *Id.*

{¶ 20} In *Zele I*, we held that where a client authorizes her attorney to negotiate a settlement and the attorney negotiates the settlement within the scope of that authority, the client is bound by it. *Id.* at ¶ 37, citing *Bromley v. Seme*, 2013-Ohio-4751, ¶ 25 (11th Dist.) ("'It is well-recognized that a party may be bound by the conduct of his or her attorney in reaching a settlement.'"), quoting *Saylor v. Wilde*, 2007-Ohio-4631, ¶ 12 (11th Dist.).

{¶ 21} Courts generally cannot presume that a lawyer had authority to bind a principal to a contract unless there is evidence that the client "cloaked" the lawyer with authority to settle. *Prime Props., Ltd. Partnership v. Badah Ents.*, 2014-Ohio-206, ¶ 18 (8th Dist.), citing *Schalmo Builders, Inc. v. Zama*, 2008-Ohio-5879, ¶ 17-18 (8th Dist.). "'Absent specific authorization, an attorney has no implied or apparent authority to compromise and settle his client's claims.'" *Schalmo Builders* at ¶ 17, quoting *Garrison v. Daytonian Hotel*, 105 Ohio App.3d 322 (2d Dist. 1995). "A party's retention of an attorney, in and of itself, is not authorization for the attorney to settle the matter." *Prime Props.* at ¶ 18, citing *Schalmo Builders* at ¶ 17.

{¶ 22} In determining whether an attorney had apparent authority to bind his or her client to a settlement agreement, "'it is the client's acts that must create the apparent authority, not the acts of the attorney." *Prime Props.* at ¶ 18, quoting *Schalmo Builders* at ¶ 18.

> "'Under an apparent-authority analysis, an agent's authority is determined by the acts of the principal rather than by the acts of the agent. The principal is responsible for the agent's acts only when the principal has clothed the agent with apparent authority and not when the agent's own conduct has created the apparent authority.'"

*Id.*, quoting *Schalmo Builders* at ¶ 18, quoting *Ohio State Bar Assn. v. Martin*, 2008-Ohio-1809, ¶ 41. Thus, for a principal to be bound by the acts of his or her agent under the theory of apparent agency, the evidence must affirmatively show:

> "(1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority."

*Scott v. Kindred Transitional Care & Rehab.*, 2016-Ohio-495, ¶ 14 (8th Dist.), quoting *Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570, 574 (1991).

{¶ 23} "Whether a party authorized the attorney to settle a case is a question of fact, which shall not be disturbed on appeal if supported by some competent, credible evidence." *Prime Props*. at ¶ 18. The burden of proving apparent authority exists rests upon the party asserting the agency. *Irving Leasing Corp. v. M&H Tire Co.*, 16 Ohio App.3d 191, 195 (2d Dist. 1984). On remand, the trial court in this case had to determine at the evidentiary hearing whether Zele's attorneys were authorized to enter into the settlement agreement on her behalf.

{¶ 24} Zele agreed to have her lawyers engage in settlement negotiations during private mediation. By agreeing to private mediation, Zele held her attorneys out as possessing authority to negotiate a settlement on her behalf. She gave Ohio Bell's lawyers and the mediator the impression that she had cloaked her attorneys with settlement authority. Wentz testified at the hearing that she believed Zele's

attorneys had full authority to negotiate a settlement on Zele's behalf. (Tr. 20.) The mediator also expressed her belief that Zele's attorneys had authority to negotiate on her behalf as evidenced by the mediator's email to the parties indicating that the case had settled during the private mediation. The mediator would not have believed the case was settled unless she also believed that Zele's attorneys had authority to consummate it. Biggerman testified at the evidentiary hearing that Zele gave him express authority to negotiate the settlement and to transmit the email confirming the settlement. (Tr. 70.) Indeed, paragraph two of the parties' mediation agreement states that "[a]ll parties agree that they will attend with one (1) or more persons who have full settlement authority to resolve the dispute."

{¶ 25} Zele testified that she actively participated in the private mediation and that her attorneys acted within the scope of the authority she gave them to negotiate the settlement. She testified, on cross-examination:

Q: And did you actively participate in that mediation?

A: Yes.

Q: Did your two attorneys?

A: Yes.

Q: And the settlement negotiations during that long mediation, those were conducted by your two attorneys; correct?

A: Yes.

Q: And during that mediation, you believe that your attorneys had your back; correct?

A: I did, yes.

Q: And during that mediation, your attorneys did, in fact, discuss what my client and my client's representatives . . . the possibility of settling this action and made an offer; correct?

A: There was a possibility, yes.

Q: So you may disagree with the fact that this case settled, you did authorize your attorneys to possibly negotiate a settlement with my client; correct?

A: Yes, yes.

Q: That's why you went to the mediation; right?

A: Yes.

. . .

Q: At any point on April 19, 2022, did you inform anyone at The Ohio Bell Telephone Company that either of your attorneys did not have your authority to negotiate the settlement of this case?

A: No.

(Tr. 74-75.) Zele further stated on direct examination:

Q: And was any offer presented to you by Mr. Biggerman or Mr. Starke, either of your attorneys?

A: Yes.

Q: And did you agree with any of those offers?

A: Yes, I did.

Q: What did you agree with?

A: I agreed with the amount. And that's all I could understand was the amount.

Q: Okay. Did you agree that that amount was for anything specific?

A: No, not at the time. I assumed that it was for just damages.

Q: Did you think you were getting additional money for anything else?

A: No.

(Tr. 78.)

{¶ 26} Zele complains that she, herself, did not agree to the terms of the settlement agreement outlined in the term sheet. She asserts, for example, that she never agreed to pay attorney fees out of her share of the settlement proceeds. However, she admitted at the evidentiary hearing that she authorized her attorneys to negotiate the settlement of her claims. (Tr. 75.) Therefore, her participation in private mediation combined with her admission that she authorized her attorneys to settle her claims conclusively established that her attorneys had apparent authority to bind Zele to the terms of the settlement agreement.

{¶ 27} The fact that Zele did not approve of the settlement agreement does not change the fact that she authorized her attorneys to enter into the agreement on her behalf. It is well-established that where a client authorizes her attorney to negotiate a settlement and the attorney negotiates the settlement within the scope of that authority, the client is bound by it. *Zele I*, 2023-Ohio-2875 at ¶ 37; *Rayco Mfg. v. Murphy, Rogers, Sloss & Gambel*, 2019-Ohio-3756, ¶ 69 (8th Dist.) ("If a client authorizes its attorney to negotiate a settlement and the attorney negotiates a settlement within the scope of that authority, the client is bound by it."); *Bromley*, 2013-Ohio-4751, ¶ 25 (11th Dist.), quoting *Saylor v. Wilde,* 2007-Ohio-4631 ¶ 12 (11th Dist.). ("'It is well-recognized that a party may be bound by the conduct of his or her attorney in reaching a settlement.'").

{¶ 28} Furthermore, courts regularly enforce settlement agreements based on term sheets that include the essential terms of the parties' agreement. *See, e.g.*, *R&L Carriers, Inc. v. Emergency Response & Training Sols., Inc.*, 2019-Ohio-3539 (12th Dist.) (Term sheet containing essential terms of settlement agreement was enforceable.). Indeed, courts routinely enforce settlement agreements without the presence of a formal settlement agreement provided there is agreement on all material terms. *See, e.g.*, *Allen v. Bennett*, 2007-Ohio-5411, ¶ 14 (9th Dist.) ("Because the parties had agreed to all the essential terms of their settlement, there was an enforceable settlement agreement."); *Spero v. Project Lighting, L.L.C.*, 2013-Ohio-1294, ¶ 27-32 (Term sheet outlining material terms constituted an enforceable settlement agreement even though it contemplated further formalization.).

{¶ 29} A settlement agreement is a contract designed to terminate litigation. *Continental W. Condo. Unit Owners Assn. v. Howard E. Ferguson Inc.,* 74 Ohio St.3d at 502. As with any contract, in order for a settlement agreement to be enforceable, there must be a "meeting of the minds" between the negotiating parties as to the essential terms of the agreement. *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16. Thus, the essential terms of the agreement must be "reasonably certain and clear." *Id*. at ¶ 17.

{¶ 30} The term sheet at issue in this case is clear and unambiguous. Ohio Bell agreed to pay a specific amount of monetary damages in exchange for Zele's release of her claims. The term sheet outlined the manner in which the payment would be made, including the payment of attorney fees, and stated that the

settlement payment would be reported to government taxing authorities. The term sheet also specified nonmonetary terms such as confidentiality, nondisparagement, reemployment, neutral employment verification, and an agreement to arbitrate any future disputes. The terms outlined in the term sheet are reasonably certain and clear and are, therefore, sufficient to create a binding agreement.

{¶ 31} Zele nevertheless contends that she would not have agreed to a settlement that did not provide for Ohio Bell to pay her attorney fees. But again, Zele's attorneys had apparent authority to agree to the settlement terms on Zele's behalf. A party cannot avoid a settlement agreement that was negotiated through counsel with apparent authority by claiming that his or her attorney lacked actual authority to enter into the settlement. *Rayco Mfg.*, 2019-Ohio-3756, at ¶ 69, citing *Fugo v. White Oak Condo. Assn.*, 1996 Ohio App. LEXIS 2725, at *8-12 (8th Dist. June 27, 1996); *Klever v. Stow*, 13 Ohio App.3d 1, 4-5, 13 (9th Dist. 1983*); see also Argo Plastic Prods. Co. v. Cleveland*, 15 Ohio St.3d 389, 392-393 (1984).

{¶ 32} The evidence establishes that Zele authorized her attorneys to negotiate the settlement on her behalf and that they entered into a binding settlement agreement. Therefore, the trial court's conclusion that Zele, through counsel, entered into a binding settlement agreement is supported by competent, credible evidence and is not against the manifest weight of the evidence.

## 2. Attorney Fees

{¶ 33} Zele further argues, within this assigned error, that the trial court erred in ordering her to pay the attorney fees Ohio Bell incurred in prosecuting its enforcement of the settlement agreement.

{¶ 34} We review a trial court's decision to award attorney fees for abuse of discretion. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. This court has also held that an abuse of discretion may be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 2008-Ohio-1720, ¶ 15 (8th Dist.).

{¶ 35} Zele contends the court abused its discretion in ordering her to pay fees because her arguments against enforcement of the settlement agreement were not frivolous. She relies on *Clark v. Corwin*, 2018-Ohio-1169 (9th Dist.) in support of her argument.

{¶ 36} In *Clark*, the plaintiff-appellant, Clark, argued the trial court erred in denying her motion for costs, interest, and attorney fees where the defendant, Corwin, engaged in "bad faith litigation tactics" by attempting to add terms to the settlement. The court rejected Clark's argument because the record did not support Clark's claim that Corwin acted in bad faith and because "Clark did not prevail on her motion to enforce in the trial court[.]" *Id*. at ¶ 21. *Clark* is distinguishable from

the facts of this case, where there is no allegation that Ohio Bell acted in bad faith and Ohio Bell prevailed on its motion to enforce the settlement agreement.

{¶ 37} Under the "American rule," a prevailing party in a civil action is generally not entitled to recover attorney fees as a part of the costs of litigation. *Cruz v. English Nanny & Governess School*, 2022-Ohio-3586, ¶ 35. However, "attorney fees can be awarded as compensatory damages to the prevailing party on a motion to enforce a settlement agreement when the fees are incurred as a direct result of a breach of the settlement agreement." *Rayco Mfg.*, 2019-Ohio-3756, at ¶ 11 (8th Dist.). "Because the attorney fees recoverable on a successful motion to enforce a settlement agreement are compensatory damages — rather than 'costs of litigation' — the American Rule does not preclude their recovery even where none of the other exceptions to the American Rule applies." *Id.*

{¶ 38} "Allowing the recovery of attorney fees as compensatory damages on a motion to enforce a settlement agreement is consistent with the strong public policy that exists in encouraging settlements and enforcing settlement agreements." *Id.* at ¶ 17, citing *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 38 (1972).

> Were it otherwise, a party who had a "change of heart" regarding a settlement agreement would have nothing to lose by refusing to comply with the settlement agreement, challenging the existence or enforceability of the settlement agreement, and continuing to litigate the matter, notwithstanding the harm to the nonbreaching party. At worst, i.e., if the court were to rule against the breaching party and enforce the settlement agreement, the breaching party would simply be required to comply with the settlement agreement as originally agreed. Allowing parties to recover attorney fees incurred to enforce a settlement agreement as compensatory damages "encourages parties to comply with the terms of their settlement agreements, lest they put

themselves at risk of paying the nonbreaching parties' attorney fees" incurred in enforcing the settlement agreement.

*Id.* at ¶ 18, *Tejada-Hercules v. State Auto. Ins. Co.*, 2008-Ohio-5066, ¶ 22 (10th Dist.).

{¶ 39} It is undisputed that Ohio Bell was the prevailing party on its motion to enforce the settlement agreement. Zele gave her lawyers apparent authority to negotiate the settlement, they entered into a binding settlement agreement on her behalf with Ohio Bell, and Ohio Bell was forced to take legal action to enforce the agreement. Therefore, Ohio Bell was entitled to recover its reasonable attorney fees as compensatory damages resulting from Zele's breach of the agreement, and we find no abuse of discretion in the trial court's decision to award attorney fees accordingly.

{¶ 40} The first assignment of error is overruled.

### C. Additional Time for Discovery and Experts

{¶ 41} In the second assignment of error, Zele argues the trial court abused its discretion by denying her request for additional time to conduct discovery after she engaged new counsel. In the third assignment of error, Zele argues the trial court abused its discretion by excluding her expert report on grounds that it was not timely filed. However, because we have determined that the case was resolved pursuant to a binding settlement agreement, these assigned errors are moot. *See* App.R. 12(A)(1)(c). We, therefore, overrule the second and third assignments of error as moot.

## D. Evidentiary Rules

{¶ 42} In the fourth assignment of error, Zele argues the trial court should not have held an evidentiary hearing to determine whether a settlement agreement existed because the parties never executed a settlement agreement. However, this court ordered the trial court to conduct an evidentiary hearing on Ohio Bell's claim that the parties had executed a binding settlement agreement, and the court was required to comply with this court's mandate. *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984), citing *Briggs v. Pennsylvania RR. Co.*, 334 U.S. 304, 306 (1948) (holding that trial courts have no authority to extend or vary the scope of remand mandated by an appellate court).

{¶ 43} Nevertheless, Zele further asserts that the trial court violated several unidentified evidentiary rules during the evidentiary hearing. Zele cites several pages of transcript where she claims the violations occurred, but she provides no legal authority or argument to support her vague claims except for a passing reference to Evid.R. 408.

{¶ 44} The burden is on the appellant, not the appellate court, to construct the legal arguments necessary to support an appellant's assignment of error. *Taylor-Stephens v. Rite Aid of Ohio*, 2018-Ohio-4714, ¶ 121 (8th Dist.), citing *Grein v. Grein*, 2010-Ohio-2681, ¶ 50 (11th Dist.). Appellate courts are not advocates. *Id.* Therefore, we have consistently held that an "appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7)."

*Siemientkowski v. State Farm Ins. Co.*, 2005-Ohio-4295, ¶ 23 (8th Dist.). *See also Strauss v. Strauss*, 2011-Ohio-3831, ¶ 72 (8th Dist.), quoting *Cardone v. Cardone*, 1998 Ohio App. LEXIS 2028 *22 (9th Dist. May 6, 1998) ("'If an argument exists that can support this assigned error, it is not this court's duty to root it out.'").

{¶ 45} Zele failed to set forth any argument with citations to legal authority to support her fourth assignment of error. Therefore, the fourth assignment of error is overruled.

{¶ 46} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)